No. 10,995.

## MRS. LAVINIA GAY VS. AMEDEE N. HEBERT.

THOMAS B. MARY, UNDER TUTOR, INTERVENOR AND THIRD OPPONENT.

Although a surviving husband, personally bound for the debts of the community, may after the dissolution thereof waive prescription, which has since accrued thereon, still when he is the tutor of his minor children, born from his marriage with his deceased wife, he can not do so, to the prejudice of her succession, or to their injury so as to burden them therewith, and to prevent their legal mortgage duly recorded against him from ranking the mortgage securing such debts.

Such acknowledgments may then be made before prescription has extinguished such debts, when they are made *bona fide*. They will, when so made, keep such debts alive, as well as the mortgage securing them, and bind the succession and the minors, but not otherwise.

The proceeds of property mortgaged can not be applied to the payment of the prescribed, though revived, debts, to the detriment of the succession and of the minors; but will go to extinguish only the debts not prescribed, secured by a mortgage ranking that of the minors.

At the dissolution of the community by the death of the wife, her share therein rests in her heirs, as owners, *cum onere*, as effectually as it would have vested in her on a dissolution by judgment, subject to all legal and valid claims against it, and susceptible of divestiture in the enforcement of these claims.

Neither the wife nor her heirs can be relieved from the effect of the pact *de non alienando*, cont iined in an act of sale, retaining a privilege and mortgage on the property se ld, to secure the unpaid price. Under such pact, the creditor is dispensed from the hypothecary action, and is entitled to ignore subsequent alienations and encumbrances, which by virtue of the terms of the law can not impair his previously acquired and vested rights, under duly recorded acts.

Although the creditor possess such rights, the encumbered property may be transferred *cum onere* and the transferree, in case of seizure and sale, to pay the secured debt, has a right to the residue of the price of adjudication, after payment of such debts.

The privilege and mortgage securing a debt cease to exist when the debt secured is extinguished by prescription. The accessory follows the principal, which is an essential foundation for it.

Waiver of the prescription does not revive the privilege and mortgage thus extinguished to the prejudice of subsequent recorded encumbrances, which then ascend and rank the extinct registries.

Unliquidated claims of minors against their tutors can not be satisfied, unless at the termination of the tutorship, but their mortgage securing such claims eventually may be recognized in the meantime.

Acts under private signature have no date as to third parties, unless the same are proved to have been executed on the same day, or at the same time, when they purport so to have been.

Merely offering of such acts in evidence gives them, as to third persons, no other date than that of the day of offering.

In a proper case, in furtherance of the ends of justice, the court may *proprio motu* amend a previous decree, so as to leave a door open for the proof of the date of an act under private signature, which was not made by some oversight, and which to all appearances can be furnished.

APPEAL from the Twenty-third District Court, Parish of Iberville. *Talbot, J.*

W. B. *Sommerville* for Plaintiff and Appellee:

1. An order for executory process, and a sale thereunder, can not be successfully attacked by way of third opposition on the ground of prescription or payment of the debt. C. P. 738, 739 and 740; Livaudais vs. Livaudais.

2. Community property may be seized, after the death of the wife, for community debts, without making her heirs parties to the proceeding. Broussard ·vs. Fournet, 28 An. 623. Killelea vs. Barrett, 37 An. 886 and 26 An. 233. Oriol vs. Herdon, 38 An. 759.

3. Surviving husband may waive prescription and confess judgment. Hawley vs. Crescent City Bank, 26 An. 230 and 391.

*Alex. Hébert* for the Under Tutor and Appellant:

An administrator or tutor can not waive prescription on a debt of the estate he administers, or against his minors. 4 An. 253, 545, 214, 216; 11 An. 667; 21 An. 373, 374; 9 An. 123; R. C. C , Arts. 340, 348.

The surviving partner and tutor can not perform the acts he was permitted to do during the existence of the community after its dissolution. The death of one of the spouses fixes the rights of each in the community. 29 An. 664; 32 An. 848; 42 An. 179; R C. C., Art. 2046.

The *contrary* doctrine maintained for a time, down to 27 An. 634; but 29 An. 664; 32 An 848; 42 An. 180, are in harmony with former decisions. 7 L. 222; 9 L. 584; 1 R. 149, 378; 10 R. 18; 3 An. 862.

When the interest of the tutor is opposed to that of the minors, they must be represented by the under tutor. R. C. C., Arts. 275, 301; 23 An. 617.

The heirs claim the nullity of the sale of their property under C. P., Art. 400; 8 An. 117; 23 An. 46.

The opinion of the court was delivered by

BERMUDEZ, C. J.   This litigation involves the rights of ownership of the minors represented by the third opponent, as their under tutor, to one undivided half of the property seized and adjudicated herein to the plaintiff, and also the mortgage rights which they assert on a like share of the same property belonging to their father and tutor who is the defendant, and which they claim are entitled to rank those contended for by the plaintiff and her succession, and which are said to exist no more.

It appears that on February 4, 1881, Hébert bought for $10,000 the undivided half of a plantation known as "Dunboyne," part ($4500) cash, and part ($5500) on time, for which he issued five notes of that date, payable two at *two* years, and the others at three, four and five years, each for $1100.   The act of sale contained the stipulation of the pact *de non alienando*, and was duly recorded July 23, following, and subsequently seasonably reinscribed.

In October of the same year his wife, Emiline Gallaugher, died, leaving several minor children as the issue of their marriage.   Her succession was opened.   An inventory was taken of the property comprising the community between them, which was appraised at

upward of $14,000, an abstract of which was properly recorded on December 10, 1881, and afterward reinscribed in time.     Hébert was appointed tutor and qualified as such on the same day.

None of the notes having been paid and all being then due, Mrs. Lavinia Gay brought suit, *via executiva*, on the 9th of March, 1891, with the averment that on the 17th of January, 1890, Hébert had obtained from her an extension to 1895, which, owing to his failure to comply with the obligations taken, authorized the suit, the same proving an acknowledgment of full indebtedness, and evidenced by an authentic act attached to the petition along with a copy of the deed of sale and the notes.

The *fiat* having issued, the undivided half purchased was seized and advertised.     Previous to the day of sale, Mary, the under tutor of the minors, filed a third opposition, claiming, in their name, the ownership of one-half thereof free from plaintiff's averred vendor's privilege and mortgage, and a mortgage on the remaining half, ranking plaintiff's pretensions.     No injunction was asked to stop the sale, but, on the prayer, a restraining order was made arresting the proceeds.

The undivided half seized was adjudicated to the plaintiff for $7500.     She joined issue by a general denial and an averment of ownership under the sheriff's adjudication, praying for the dismissal of the opposition and for a recognition of her title.

There was judgment against the under tutor in favor of the succession of the plaintiff dissolving the restraining order touching the proceeds and reserving the rights of the minors against their father and tutor.     Made a party, he failed to join issue, and no judgment was rendered as to him.

The under tutor appeals, and the administrator of the plaintiff's succession joins, asking that the judgment be amended by recognizing the title of the estate to the undivided half.

The main contention of the under tutor on behalf of the minors is that, at the death of their mother, they inherited the one undivided half of the property seized, which formed part of the community which existed between her and their father, subject to all valid community debts against it; that at the date of the institution of this suit, the *five* notes were prescribed, as to their mother's succession and themselves; that thereby the privilege and mortgage claimed by the plaintiff ceased to exist and to encumber the property to their

prejudice, so that their share therein was cleared, and that the share of their father was likewise relieved, their legal and recorded mortgage against him, as their tutor, ascended and ranked the privilege and mortgage contended for by the plaintiff and her succession. The under tutor prays accordingly, asking, besides, a judgment against the tutor.

In answer, the administrator retorts that, at the date of the suit, not one of the notes was prescribed; that as to such which might have been so considered, the defendant had waived and interrupted prescription, and had formally acknowledged liability and indebtedness.

By reference to indorsements on the *two* notes which matured at *two* years, in 1883, it appears that, indeed, Hébert waived prescription and acknowledged indebtedness, and, by inspection of the act. of extension, it also appears that he did the same thing, or the equivalent, as to all the *five* notes.

The suit having been instituted on March 9, 1891, and the fifth note fallen due on the 4th of February, 1886, it is apparent that they were *all* prescribed *on their faces*, on February 4–7, 1891—more than a month *before* the filing of the petition—*unless* the acknowledgment relied on had a contrary effect.

The waiver and acknowledgments on the notes at *two* years were made more than *five* years *after* they had matured, the acknowledgments and promises in the act of January 17, 1890, which referred to *all* the five notes, were made after the note at *three* years was prescribed; but *before* those at *four* and *five* years had so become. Hence, they *interrupted* prescription as to these *two* only, but they revived the other three as ordinary notes, as the privilege and mortgage securing them died away, as to third persons, the moment they became prescribed. *Accessorium sequitur principale.* R. C. C. 3285.

The consequence was that the legal mortgage of the minors, duly recorded on the 10th of December, 1881, in consequence of the lapse of the privilege and mortgage securing the three prescribed notes, ascended and took precedence, and is entitled to a preference.

Nevertheless, Hébert had the right, *before* prescription had extinguished the last two matured notes, to acknowledge them, as he did, in the extension act, and thus to interrupt prescription, and the privilege and mortgage securing them on the undivided half bought could be, and was maintained.

20

It was a community debt, and the acknowledgment was made *bona fide* and rightfully. He was unquestionably at the time owner of one-half of that half, or one-fourth of the whole, and the usufructuary of the remaining like share. The act of extension shows that he was dealt with in that capacity and thus implies an inheritance by the minors of their mother's share, by her death. It was unnecessary for him to have acted avowedly as tutor of the minors in order to bind them by such acts, and to continue the debt as a community debt, secured in the same way that it was from the beginning.

The departure from the old jurisprudence for a while, in this respect, has been repudiated, and the powers of surviving husbands continue shackled to a certain extent.|

There can be no doubt that, notwithstanding the pact *de non alienando*, the object of which was merely to dispense with the hypothecary action eventually to enforce judgment, but not to prevent the purchaser—although part of the price was unpaid and secured by privilege and mortgage on the property—from disposing of it by transfer or mortgage in subordination of the vendor's claim, as long as valid, the property could pass from Hébert by a complete divestiture by him. Hence he could have surrendered it to his creditors; transmitted it by succession to his heirs; his wife, common in property with him, could, under the law, notwithstanding any adverse will on his part, have acquired half of it at the dissolution of the community by judgment, and have transmitted by her death to her heirs the same share therein (minors being always beneficiary heirs), as it actually happened in the present instance; but, of course, such transfer, as well by reason of the *pact* as of the law, and sheer justice and equity, could not pass *title* to the prejudice of the anterior vendor's privilege and mortgage securing payment of his just debt. The ownership passed *cum onere*, vesting a defeasible title, susceptible of divestiture in case of non-payment of that claim, and by proceedings directed *alone* against the original purchaser, regardless of subsequent transfers or encumbrances, in whatever form, or under whatever circumstances made.

Hence it is, that, when the plaintiff brought this suit, she acted legally, clothed with the right of divesting Hébert and any subsequent owner or owners of the title in subjection of the undivided half of the plantation to the payment of *what* was due her, which happens to be *only* the amount of the two last mentioned notes,

Gay vs. Hebert.

falling due on February 4–7, 1885, and February 4–7, 1886, as to which prescription was interrupted by acknowledgment and promise to pay on the extension notarial act of January 17, 1890, and which, on the day of the sheriff's adjudication, amounted in capital and interest from date to a figure which it is unnecessary to state presently.

So that, when the undivided half of the property was adjudicated to Mrs. Gay, it passed absolutely to her regardless of the inheritance of half thereof by the minors from their mother, who could not transmit to her heirs, by succession, more rights than she could have acquired on a dissolution of the community by judgment.

The undivided half having been adjudicated for $7500, the plaintiff is entitled to apply the same to the extinguishment, or payment of the two last matured notes in capital, interest and costs, absolutely, and to retain the balance of the price as accruing one-half unconditionally to the minors as representing their share of inheritance, and the other half to Hébert, subject to any claim which the minors may have against him, at the termination of the tutorship, upon an account properly rendered, contradictorily with all concerned; the whole of said balance so retained to remain secured by vendor's privilege on said undivided half, and to bear legal interest from the date of the sheriff's adjudication until legally deposited to be relieved from interest, or paid over to the tutor for account of the minors, and also for his own account, under suitable judicial proceedings to be had for the purpose.

It is therefore ordered and decreed that the judgment appealed from be reversed; and

It is now adjudged that the third opposition of the under tutor be sustained in part and dismissed in part, and that plaintiff's reconventional demand there against be *likewise* sustained and dismissed; and, accordingly,

It is ordered, adjudged and decreed that the plaintiff or her succession be recognized as the absolute owner of the undivided half of the "Dunboyne" plantation herein seized and adjudicated to her;

It is further ordered, adjudged and decreed that the proceeds of the sale of said plantation, retained by the plaintiff, be distributed as follows, viz.: that the plaintiff apply as much thereof as may be necessary to pay herself the amount of the last two notes sued on, maturing in 1885 and 1886, as stated in the opinion, in capital, in-

terest, attorney's fees thereon and costs of suit, up to the day of adjudication, and retain the residue of the said proceeds, the same to accrue as follows: one-half thereof to the minors herein represented by the under tutor, and the remaining half to the defendant Hébert, subject to the rights of the minors against him at the termination of the tutorship; the same, while thus retained, to remain secured by vendor's privilege on said undivided half of said "Dunboyne" plantation, and to bear legal interest, as stated in the opinion, until legally deposited, or paid over, as likewise therein mentioned;

It is further ordered, adjudged and decreed that the third opposition and the reconventional demand there against, in so far as not sustained, be dismissed, and that the rights of the minors against their tutor, not passed upon, be reserved for future action;

It is further ordered, adjudged and decreed that the plaintiff pay costs in the lower court, from the filing of the third opposition of the under tutor, and that plaintiff, and the third opponent pay, share alike, the costs of appeal.

PER CURIAM.

BERMUDEZ, C. J.   There appears on the note at three years an acknowledgment of indebtedness purporting to have been made on the 10th of January, 1889, *before* five years had run from the maturity; but the date at which it was made has not been proved.

The offering of the endorsement during the trial proved the genuineness of the writing, but did not establish its date. Writings under private signature, offered in evidence, have, as to third persons, no other date than that at which they are thus offered.

The authentic act of acknowledgment was executed after *the* five years, and fixed the date of acknowledgment only as to the notes maturing in 1885 and 1886.

Justice will not permit that the note at three years, which is for part of the price of sale, be treated as prescribed, when it may not be so, and the absence of proof is an oversight.

The right to recover its amount, if prescription was truly interrupted, should be reserved and the decree shaped to that end.   42 An. 858.

It is therefore ordered that the previous decree be amended so as to reserve the right of the succession of plaintiff to prove the date of the acknowledgment on the note at three years, that a sufficient

amount be retained from the price of adjudication to meet it and the two other notes, and that to that end the case be remanded, with instructions to allow that note, if the acknowledgment is proved to have been made at the date that it purports to have been made, and that thus amended, the previous decree be confirmed and remain undisturbed.