The opinion of the court was delivered by
Nicholls, C. J.
The first questions which arise are those respecting the jurisdiction of the two courts.
Ermann &0ahn, as mortgage creditors of Servel, seized under ex-ecutory proees, the plantation which was subject to their mortgage, together with all the mules, carts, agricultural implements thereon. At the time of the seizure of these parties, the movables, it would appear, were under seizure by the laborers, claiming a privilege through writs of provisional seizure. In view of an anticipated sale of the property and the realization of a fund therefrom, the laborers had an unquestionable right to present their claims to the District Court by way of third opposition, without reference to their being under fifty dollars. Shiff vs. Oarprette, 14 An. 802. The seizing creditors consented, so far as form was concerned, to their joining in a single petition.
The sale, with reference to which this third opposition was framed, having taken place (subsequently to the filing of the same) in a manner which the third opponents contend was unauthorized by law, they subsequently united in the present action, attacking the appraisement made prior to the sale, and the sale itself. Assuming that they could maintain this contention, they had a common interest in invoking the aid of the court to set the sale aside. We think *974 .that the District Court, as to amount and jurisdiction of the cause, and that plaintiffs’ appeal to this court, must be maintained — the aggregate amount of the claims and of the matters in dispute being over two thousand dollars.
We think the District Court had jurisdiction of the case, in so far as the domicile of parties was concerned. The plaintiffs attack certain proceeding ordered by the District Court for St. James to be taken in a suit pending before it, prior to and leading up to a judicial sale. They claim that these orders were not carried out, that the proceedings were fraudulent, and that the nullity of the sale would follow as a legal consequence. To such a suit the seizing creditors and the seized debtor, who are charged as having colluded in bringing about the illegal act, were necessary parties; the seized debtor was a resident of the parish of St. James, and the judicial proceeding attacked was before the court of his domicile. We think that court was the proper one to pass upon that issue.
Defendants rely, as we have seen, upon their exception of no cause of action, and of estoppel. To a certain extent at least, they can be taken up together, and we postpone a separate discussion of the question of estoppel until after we shall have examined and ascertained whether the demand of the plaintiff discloses a cause of action.
. We do not think that the allegations of the plaintiffs, charging that Servel furnished Ermann & Oahn a large portion of the money with which they acquired the Hopkins mortgage, charging that at the time of the adjudication of the property, and at the time of the institution of this suit, there existed a private agreement between the seizing creditors and Servel, by which the former was to retro-cede the property to the latter through a person interposed; that since the adjudication the property has been in the possession of Pierre Schepp, a confidential friend of Servel, who is working it in his own name, but on account of Servel, and that a fictitious mortgage, inferior in rank to that of the seizing creditors, -was consented to by Servel in favor of Schepp, would, if true, lead up to the nullity of the judicial sale and to the granting of the relief which plaintiffs ask at our hands.
Granting that Servel furnished Ermann & Oahn with a portion of the money used by them in obtaining the transfer to them of the Hopkins mortgage, the effect of that fact would simply be to operate *975 & payment pro tanto of the indebtedness to Miss Hopkins, and Ermann & Oahn would still remain the owner of her claim, reduced, it is true, but none the less a claim secured by mortgage on the property, entitling them to executory process, and to a sale under the writ. If Ermann & Oahn proceeded upon their claim, with no other objection to their course than that the amount for which the writ issued and the property was sent to sale was too large, that fact would not affect the validity of the title, but simply the question as to the payment of the price. Lynch vs. Kitchen, 2 An. 845; Gay vs. Hebert, 44 An. 301; Truxillo vs. Delaune, 47 An. 16.
If the effect of the partial payment, through money furnished by Servel, was to reduce Ermann & Oahn’s claim below their purchase price, they would have to hold the surplus, subject to proper payment to parties entitled to receive it.
The plaintiffs do not deny that at the time of the order of seizure and sale, and of the adjudication, Ermann & Oahn held a claim secured by mortgage on the property. They do not deny that they had the legal right to the order of seizure and sale which was issued upon their petition. No objection is made to any portion of the proceedings until the appraisement is reached, and the appraisement is attacked, not as to the valuation placed upon the plantation itself, but upon that assigned to the movables which were to be sold with it. If plaintiffs had the legal right to a separate sale of the movables, under their privilege and seizures, they expressly waived it, and consented to a sale in block. If plaintiffs claimed the legal right to ignore the sale under the mortgage, and to assert that their privileged rights remained upon the objects struck by their privilege, unaffected by the sale under Art. 3216, O. 0., as giving them a separate, independent, direct remedy to be directed in spite of the sale against the mules, carts and agricultural implements effected by their privilege, they waived it, and consented that they should receive their pro rata from a sale in block. The case, with reference to the result of the simple fact that Servel had furnished a portion of the money with which the Hopkins claim was bought, is one where a mortgage creditor had issued a writ for too large an amount, and had under a writ of seizure and sale, which had issued under such circumstances, bought in the property. We leave out of view for the moment, and in making this statement, the objections raised to the appraisement made upon the movables. Granting that Ermann *976 & Cahn, under their proceeding, could have acquired and did acquire a valid title to the property, we do notthink that that result was injuriously affected by the existence, either at the time of the order of seizure and sale, or of the adjudication of an agreement, that after the sale should have taken place Ermann & Cahn would retrocede the property to some third nerson for the benefit of Servel.
If these parties had a legal mortgage on the property, they were free to enforce it, and if they enforced it, and cut off by becoming purchasers at the sale, all rights of the creditors of Servel, upon the property itself, transferring whatever claims creditors might have to the proceeds of sale, they were at liberty to do with their own what they pleased, and if they thought proper to transfer the property to a third person, in order that Ermann & Cahn might derive a benefit from it, that fact could not result in divesting them of rights which had legally vested in him under their execution. Gilkerson- Sloss Com. Co. vs. Bond & Williams, 44 An. 844. The creditors might, perhaps, (if the special agreement was one which would enable their debtor to evade their pursuit in the future), attack the agreement itself or make it turn to their own advantage, but they could not oust the purchaser from the property.
It is claimed by the plaintiffs that the adjudication to Ermann & Cahn was a simulation.
We do not see what bearing the mortgage granted to Schepp, or what bearing Schepp’s present possession of the property, has upon the validity of the judicial sale made to Ermann & Cahn.
We now come to the real contention of the plaintiffs, which is, that by reason of what they claim to have been a fraudulent undervaluation of the movables upon which their privileges rested, they have the right to have the entire sale annulled and set aside. We are referred to cases where sales have been set aside by reason of no appraisement, or of an improper appraisement having been made.
In this particular case, the plantation, it is conceded, was properly appraised. The movables which were sold with the plantation in block, were sold in that manner, by express consent, b'y appraisers appointed in the precise manner which opponents asked for. The object of the third opposition on their part was to obtain their pro rata from the sale. They claim that on account of fraud in the valuation of the movables, their pro rata has been made to be too small. We do not think, that in order to reach the proper pro rata (assuming *977 that there was fraud, and their pro rata was really too small), aud in order to obtain relief after the sale has taken place, the entire sale should be sec aside. Plaintiffs only interest is to obtain a larger amount of money from the sale than would be assigned to them as matters stand. Relief could have been obtained by them without the necessity of upsetting the entire sale. By proper allegations they could have attacked the appraisement, asked that it be set aside, a new one ordered, and that the rights and obligations of parties should be adjusted and apportioned under the new one. This relief they have not asked, and under the pleadings we can not grant it. We make the last statements upon the theory that they would not be estopped by remaining silent until after the sale, nor by the action of their, counsel in bidding at the sale. Whether or not they would be estopped in asking relief to this extent is a question which we need not discuss, as it is not properly before us.
We think the judgment of the District Court, in so far as it finally closes an attack by the plaintiffs upon the judicial sale, is correct. We do not understand it to go any further, or to conclude the plaintiffs as to any right and remedy they may have in respect to seeking to have the appraisement of the movables set aside for fraud, a new one taken, and an adjudication made of the rights and obligations of parties had on the basis of a new appraisement of the movables, all questions upon that subject are left open by the judgment, and so construing it, we affirm the judgment appealed from.