Truxillo vs. Delaune et al.

No. 11,668.

MRS. OVILLE A. TRUXILLO, WIFE OF C. NUMA FOLSE, vs. J. ONILE DELAUNE ET AL.

A person who buys property affected by a recorded mortgage containing the clause *de non alienando* is legally bound and held to know that the holder of the mortgage claim under that clause is entitled, in case of default of payment, to enforce his rights as if the original owner still held the property; no notice need be given him. The fact that a subsequent purchaser may have personally assumed the mortgage does not affect the mortgagee's rights.

The mortgagee may proceed to execute his mortgage either *via ordinaria* or *via executiva*. Levy vs. Lake, 43 An. 1035.

APPEAL from the Twentieth District Court, Parish of Assumption Guion, J.

R. N. *Sims* for Plaintiff and Appellant.

*Beattie & Beattie* for Defendants and Appellees.

On January 12, 1878, by public act before L. U. Folse, notary, C. Numa Folse and Honoré Folse, purchased each an undivided half of the Pothier plantation from the heirs of Edward Pugh. A

part of the price was paid cash, and a part on credit. For the credit instalments the purchasers executed and delivered their joint notes payable to their order and by them endorsed in blank, and secured these notes as to their payment, together with interest and attorney's fees, by special mortgage and vendor's privilege on the entire property purchased. The act contained the clause *de non alienando*.

Subsequently to this purchase Oville Truxillo, wife of C. Numa Folse, became the owner, on January 8, 1885, by an act of exchange between herself and Honoré, of the undivided half of the property which had been purchased by him.

Through this act C. Numa Folse and his wife became joint owners of the plantation.

In the act of exchange the indebtedness due by Honoré Folse to the heirs of Pugh was referred to, and Mrs. Oville Truxillo (Mrs. Numa Folse) assumed to pay the same.

In June, 1893, Mrs. W. B. Ratliff, one of the original vendors, filed a suit in the District Court for Assumption on three of the notes, in which, ignoring Mrs. Numa Folse's connection with the property or the debt, she sued C. W. Folse and the heirs of Honoré Folse (the death of the latter being alleged) *via ordinaria*, praying for judgment *in solido* against all the parties; for the recognition and enforcement of the special mortgage and vendor's privilege.

C. Numa Folse confessed judgment, and judgment was entered up against him on the 9th of June, 1893, in conformity to the prayer of the petition; but the legal delays not having at that time expired as against the heirs of Honoré Folse, the case went over as to them. At a subsequent term, these heirs having been cited and the delays having then expired, judgment was rendered against them, ordering the property to be sold to pay the debt, and ordering each of them to pay his *virile* share of any deficiency in the price. Both of these judgments have become final.

On the 11th of December, 1893, a writ of *fi. fa.* was issued in the suit, in which the two judgments were rendered, directed to the sheriff of the parish of Assumption, ordering him that by seizure and sale of the property, real and personal, rights and credits of C. Numa Folse and the heirs of Honoré Folse (naming them), he cause to be made the amount of the judgments rendered " *to satisfy a judgment* lately rendered against the said C. N. Folse *et al.*, in the

Twentieth Judicial District Court of the parish of Assumption, in favor of Mrs. Elizabeth B. Ratliff, wife of W. B. Ratliff.''

Under this writ the sheriff seized in its entirety, the property on which the special mortgage and vendor's privilege rested, and under this seizure he adjudicated the same at public sale, after advertisement, to Onile Delaune, one of the defendants herein, on the 27th of January, 1894.

The purchaser took possession on the 29th of the same month of the plantation, but Mrs. Folse continued to reside in the dwelling house and to occupy the adjacent yards and enclosures.

On the 24th of February, 1894, the present plaintiff sued out a writ of injunction by which the purchaser was prohibited from in any way interfering with her, she declaring herself to be in possession of one undivided half of the property.

The grounds for the injunction are:

That the sale made by the sheriff to Delaune was (so far as she is concerned) an absolute nullity; that she was not a party to the proceedings or judgment in the matter in which the writ issued; that it directed the seizure and sale of the property of her husband and of the heirs of Honoré Folse, and not the seizure and sale of her property, and that in attempting to seize and sell the undivided half of the plantation which she owned, and of which she was in possession, the sheriff's acts were *dehors*, the orders of the court, *ultra vires*, utterly illegal and unwarranted and in violation of her rights of ownership and possession; that she never gave her consent to said proceedings and sale, but constantly protested against the same, and the sale as to her undivided half was an absolute nullity and should be so decreed and she so prayed.

2. That throughout said illegal and void proceedings the plaintiff in the suit in which the sale took place, the sheriff and the defendant Delaune acted tortiously, maliciously and wrongfully, with intent to injure the present plaintiff, with full knowledge of all the nullities in the proceedings—in bad faith and with the design of depriving her of the property by undue means and without due process, and she expressly charges Delaune to be a purchaser in bad faith.

3. That at the time of the suit and of the sale her half of the property was unaffected by any claim of the plaintiff, Mrs. Ratliff, against the defendant in the suit brought by her (No. 3066), as the notes declared upon by her were at that time prescribed and barred by the

prescription of five years and ten years, as to all the parties to said suit except as to her husband, C. Numa Folse, and that neither she nor her property could be bound for the debts of her husband; that the failure of the defendants to plead said prescription did not and could not affect her rights, and that she was entitled to invoke and did invoke the same.

Delaune, after pleading the general issue, admitted his purchase of the property in its entirety at the sheriff's sale, and alleged that all the proceedings which led up to the sale, and the sale itself, were legal and valid. Alleging injury from the injunction, he reconvened, praying that in dissolving the same judgment might be rendered in his behalf against the plaintiff and the sureties on the bond for twenty-five hundred dollars—five hundred dollars of the same being due for attorney's fees.

Mrs. Ratliff pleaded the general issue and maintained the legality of her proceedings and of the sale made therein.

The District Judge rendered judgment in favor of the defendants, against the plaintiff, dissolving the injunction, with three hundred dollars damages for attorney's fees, and decreeing the defendant to be legal owner of the property purchased by him, and quieting him in the possession of the same.

The plaintiff appealed, and defendant has filed a motion to amend the judgment by increasing the amount of the damages for attorney's fees to five hundred dollars, and asking judgment for the rental of the house occupied by plaintiff, and the value of corn and hay taken and disposed of by her.

The opinion of the court was delivered by

NICHOLLS, C. J. In his opinion the District Judge stated that Delaune, under the evidence, stood before the court as a purchaser in good faith utterly untrammeled by any understanding or arrangements between other parties prior to or at the time of the sale; that the issues before him would have to be passed on from that standpoint, and that consideration of the relations of the other parties *inter se* was irrevelant, and unnecessary to be disposed of. We find no error in his so holding.

Delaune being a purchaser in good faith we proceed to examine the questions of law before the court. Was the plaintiff, Mrs. Will-

iam B. Ratliff, authorized legally to proceed against the property mortgaged, ignoring the transfer of a portion of the same to Mrs. Numa Folse, subsequently to the granting of the mortgage, and ignoring her being in possession thereof?

A person who buys property affected by a recorded mortgage containing the clause *de non alienando* is legally bound and held to know that the holder of the mortgage claim is entitled under that clause, in case of default of payment, to enforce his rights as if the original owner still held the property, and to know that in so doing no notice need be given to him. The fact that the subsequent purchaser may have personally assumed payment of the mortgaged debt does not affect the mortgagee's rights if he elects not to accept the assumption of the debt.

This statement, as a general proposition of law, needs no citation of authorities in support of it. We have next to see whether there was any special circumstance in this particular case which would take it out of the general rule.

The first fact connected with the proceedings to which our attention has been directed is that at the time of the institution of the suit of Mrs. Ratliff, Honoré Folse, one of the mortgagors, was dead. Did that fact impair the mortgagee's rights springing from the clause mentioned? That question is not a new one; it has been several times asked and answered by this court in the negative. See Boguille vs. Faille, 1 An. 205; Lavillebeuvre vs. Heirs of Frederic, 20 An. 374; Aillet vs. Henry, 2 An. 145; Rowly vs. Rowly, 2 An. 209; Dupuy, Curator, vs. Bemiss, 2 An. 509; McCalop vs. Fluker's Heirs, 12 An. 551; Randolph vs. Heirs of Chapman, 21 An. 486; Walmsley, Executor, vs. Levy, Executrix, and Levy, Executrix, vs. Raines, Sheriff (consolidated), 36 An. 226.

Were those rights waived or impaired by the mortgagor's proceeding *via ordinaria* instead of *via executiva*?

In Levy vs. Lake, 43 An. 1035, we affirmed the principle announced in Bienvenue vs. Insurance, 33 An. 218, in which the court said:

"The holder of a mortgage importing confession of judgment is authorized by law to proceed by executory process against the debtor's property, and we can not see how any of his mortgage rights can be restricted by a judgment of a competent court condemning his debtor personally to pay the debt, and recognizing the

mortgage rights.  We understand, on the contrary, that by such a judgment the rights of the creditor are enlarged instead of being curtailed or abridged.''  These decisions we think unquestionably ·correct.

Did the fact that the property was seized and sold under a, writ of *fi. fa.*, instead of a special writ of seizure and sale, have any effect upon the legality and validity of the sale? We think not.  It is true that a writ of *fi. fa.* should not and could not legally issue in enforcement of a judgment against a succession, so as to authorize the sheriff holding the writ to seize generally the property rights and credits of the succession, independently of any question as to whether payment of the judgment, or the debt evidenced by it, was secured by mortgage or privilege on particular property; but objections to such a writ in the matter of the seizure of succession property are leveled, not at the form of the writ, but at the action of the sheriff under it.  If creditor's rights are secured by recognized mortgage on special property—by a judgment which would authorize the seizure and sale of the property under a writ specially directed to that effect—the debtor can find no just ground of complaint in the fact itself that the court's authorization to seize and sell was broader than it was justified to give, if the actual seizure and sale made under the writ fell inside of ·the particular seizure and sale which the judgment warranted.  This question, like the former ones submitted, has been judicially passed upon.  See Levy vs. Lake (just cited).

It is contended that, granting that the judgment obtained by Mrs. Ratliff could be legally enforced through and under writ of *fi. fa.*, two writs were necessary to bring about a seizure and sale of the property in controversy, inasmuch as there were *two different judgments* entered in the suit.  It is maintained that the execution of each judgment should have been supported by separate writ.

The demand of the plaintiff was a single one; the two mortgagors were made parties defendant—C. Numa Folse personally, and Honoré Folse through his heirs.  The unity or singleness of the demand was not broken by the fact that the case was ''*tried*'' at different times, as to the different defendants.  When judgments were finally obtained against defendants in exact conformity to the prayer of the plaintiff, the case stood *quoad* its execution as if the different judgments had been rendered at one and the same time.  All parties

were bound by the judgments precisely as they would have been had the proceedings terminated in a single judgment. In both judgments the mortgage was recognized on the entire property and ordered to be enforced.

It is advanced as a ground for the nullity of the sale of the property, so far as the undivided half of the property was concerned which belonged to Honoré Folse, and which was sold to Mrs. C. Numa Folse, that the notes upon which Mrs. Ratliff declared were, *quoad* Honoré Folse and his heirs, prescribed when she instituted her suit and that the present plaintiff is entitled to invoke prescription though not pleaded by the debtor and his heirs on their own behalf.

The present suit does not involve, as it stands before us, any question other than the validity and legality of the sale made in execution of Mrs. Ratliff's judgment. There is no issue as to any personal indebtedness of the plaintiff or of the heirs of Honoré Folse, and no contest over the *proceeds* of the sale.

Was the sale as made legally authorized to be made? If the entire property was legally subject to execution under the judgment against C. Numa Folse, the amount for which it was sent to sale becomes immaterial in so far as the title of a purchaser was concerned. The title would pass under a thousand dollar judgment as completely as for a five thousand dollar judgment, if the proceedings were otherwise admittedly legal. We do not think that the question of the personal liability of Honoré Folse and his heirs on the notes given by him and his brother plays any part in the determination of the legality of the sale made in this case.

It is undoubtedly true that the mortgage granted by Honoré Folse on the property purchased by him viewed from the standpoint of an accessory obligation supporting his own personal liability would fall if that personal liability were extinguished, but viewed as an accessory obligation supporting C. Numa Folse's personal obligation it would be held in force so long as the latter's obligation was in full force. A person can consent independently of any personal obligation on his part that his property be *mortgaged* for the *debt of another* (Civil Code, 3295). When so given the obligation, whose continued existence is essential under Art. 3285, Civil Code, to the continued existence of the mortgage, is that of the debtor whose debt it secures. Honoré Folse consented that his property be mortgaged not only to

secure his own debt, but to secure that of his joint purchaser.    The debt of the latter is conceded to be still alive and we need look no further for the purposes of this suit.    The personal indebtedness of the brothers was joint, but the mortgage securing each debt covered the whole property and was indivisible.    Bagley vs. Tate, 10 Robinson, 45; Chaffraix & Agar vs. Packard *et al.*, 26 An. 177; Stewart, Hyde & Co. vs. Madame Buard, 23 An. 411; Walmsley vs. Levy, 36 An. 226; Lallande vs. McRea, 16 An. 193; Hughes, Administrator, vs. Patterson, 23 An. 680; Lee vs. Packard *et al.*, 25 An. 397.

Plaintiff argues that to maintain the sale in this case would be to justify the sale of her property to pay the debt of her husband, which would be in violation of express law.

The plaintiff did not bind her property for the debt of her husband—she purchased it *after the property was mortgaged* by the person then owning for the debt of her husband.    When she bought she did so *cum onere*—the creditors' rights to foreclose and make available his mortgage were not in the slightest degree affected by the after acquisition of the property by the wife—especially so under the clause *de non alienando*.

We are of the opinion that the proceedings in the case were regular, and that the adjudication vested a legal title in the defendant, Delaune.    We see no reason to amend the judgment.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and is hereby affirmed.