FOURNET, Justice.
 

 This is an action by the children and heirs of Mrs. Emma B. Childs, deceased, to set aside executory proceedings and a deed affecting the property that belonged to the community of acquets and gains formerly existing between their mother and Charley S. Childs, and to have themselves decreed to be the owners of an undivided half interest in the property. The case is before us on an appeal taken by the plaintiffs from a judgment rejecting their demands.
 

 Charley- S. Childs, during his marriage to Mrs. Emma B. Childs, plaintiffs’ mother, gave a promissory ’note, representing a community obligation, for the sum of $475, payable to the order of the Bank of Minden. To secure the payment of this note, he executed a mortgage importing a
 
 *869
 
 confession of judgment in favor of the payee of the note “or any future holder” and affecting certain real estate, including the NW% of the NW% of Section 20, and the north 26 acres of the SWy4 of the SW% of Section 17, T. 21 N., R. 9 W., which was community property.
 

 On November 21, 1935, James T. Pruitt, alleging that he was the holder and owner of the note and that there was a balance of $325 due thereon, proceeded via ex-ecutiva against Charley S. Childs, individually and as surviving spouse, Mrs. Childs having died on May 31, 1929, leaving as her sole heirs Charles H. Childs, Izora Childs, Willie Childs, and Ethel Childs, the plaintiffs in this suit, who were, at the time, all minors. On the same day Charley S. Childs, plaintiffs’ father and the maker of the note, accepted service of the petition and appeared before a notary public for the purpose of acknowledging having executed the following acknowledgment and waiver:
 

 “I, Charley S. Childs, acknowledge service of the foregoing petition, and waive issuance of executory process and demand for payment, all notices of seizure, all legal delays, and consent that the property described in said petition might be immediately seized and advertised for sale to pay and satisfy the indebtedness alleged, which is acknowledged to be due. This acknowledgment and waiver of services and notices is made by me individually and as surviving spouse in community with my deceased wife, Mrs. Emma Barnell Childs.”
 

 In pursuance to a writ of seizure and sale dated November 22, 1935, the sheriff, on January 4, 1936, adjudicated the property to the seizing creditor for the sum of $780. Of this amount, after the principal, interest, attorney’s fees, coste of court, and tax lien subrogations affecting the property had been paid, the sum of $233.51 was left. This was paid to the ranking judgment creditor of the community, the Minden Mercantile Company, Ltd. On August 28, 1936, James T. Pruitt deeded this property to James H. Pruitt for the recited cash consideration of $750.
 

 The present suit was instituted on March 20, 1937, by the children and heirs of Mrs. Childs for the purpose of setting aside the proceedings under which this property was seized and sold, as well as the de.ed of conveyance from James T. Pruitt, the purchaser at the sale, to James H. Pruitt, and to have themselves decreed to be the owners of an undivided half interest in the property.
 

 From plaintiffs’ petitiop it appears their conclusion as to the nullity of the executory proceedings is based on allegations which are, substantively, (1) that the order for the issuance of executory process was unauthorized and improvidently granted because (a) it was obtained prior to the time the petition was filed and docketed, (b) the note executed upon was not transferred by notarial, act, and (c) the amount claimed in the petition is in excess of the amount due on the note; and (2) that they were not made parties to the proceedings — in contravention of the
 
 *871
 
 due process clause of the constitutions of this state and of the United States — the only party defendant being Charley S. Childs, who executed the above quoted acknowledgment and waiver, which in effect was in fraud of their rights. The attack on the deed from James T. to James H. Pruitt is based on the allegation that it is a simulation, pure and simple.
 

 Counsel for plaintiffs concedes that under the provisions of Act No. 57 of 1926 it was proper, after the death of Mrs. Childs, to institute the proceedings contradictorily with Charley S. Childs, the surviving spouse, but he contends the act is stricti juris and that inasmuch as the plaintiffs had, upon the death of their mother, become seized of her undivided half interest in the community under the doctrine of “le mort saisit le vif,” their father was without authority to accept service of process or waive all of the delays and notices required for the seizure' and sale of property.
 

 Prior to the adoption of Act No. 57 of 1926 it was the settled jurisprudence of this state that a mortgage affecting community property could be foreclosed under executory process against the surviving
 
 husband
 
 alone and that it was not necessary to make the heirs of the deceased wife parties. Citizens’ Bank v. Maureau, 37 La.Ann. 857; Oriol v. Herndon, 38 La.Ann. 759; Landreaux v. Louque, 43 La.Ann. 234, 9 So. 32; Gay v. Hebert, 44 La.Ann. 301, 10 So. 775; Luria v. Cote Blanche Co., 114 La. 385, 38 So. 279; Schlieder v. Boulet, 124 La. 658, 50 So. 617; and Landry v. Grace, 167 La. 1042, 120 So. 770, 772. In the Landry case, supra, it was pointed out that: “The obvious purpose of Act No. 57 of 1926 was to make the same rule applicable to those cases in which the
 
 wife
 
 might be the surviving spouse.” (Italics ours.)
 

 At the dissolution of the community by the death of Mrs. Childs, her heirs became seized of her interest therein “cum onere * * * subject to all legal- and valid claims against it, and susceptible of divestiture in the enforcement of these claims.” From the syllabus to the case of Gay v. Hebert, supra.
 

 In the Gay case the defendant, Hebert, had, in 1881, bought an undivided half interest in a plantation for $10,000, of which amount he paid $4,500 in cash and gave five notes, secured by vendor’s lien and mortgage on the purchased property, to insure the payment of the remainder. In October of the same year his wife died, leaving several minor children, issue of her marriage to Hebert. In 1890, after prescription had already run against some of the notes, Hebert secured an extension of the five notes, at which time he waived prescription and acknowledged the indebtedness. None of the notes having been paid, the mortgage creditor proceeded against Hebert via executiva in 1891, alleging that his failure to comply with the obligations undertaken in the act of extension authorized the suit and that the extension proved an acknowledgment of the full indebtedness. The undertutor of the minors filed a third opposition, claiming the ownership of the property in their name. The court, in holding that Hebert’s waiver of prescription in the act of extension served to interrupt prescription only as to the notes which were
 
 *873
 
 not prescribed and that his acknowledgment of the indebtedness revived the notes against which prescription had already run as ordinary notes only, subject to the legal mortgage of the minors against their father, commented as follows:
 

 “It was a community debt, and the acknowledgment was made bona fide and rightfully. He was unquestionably at the time owner of one-half of that half, or one-fourth of the whole, and the usufructuary of the remaining like share. The act of extension shows that he was dealt with in that capacity, and thus implies an inheritance by the minors of their mother’s share by her death. It was unnecessary for him to have acted avowedly, as tutor of the minors, in order to bind them by such acts, and continue the debt as a community debt, secured in the same way that it was from the beginning.
 

 * * *
 

 “Hence it is that, when the plaintiff brought this suit, she acted legally, clothed with the right of divesting Hebert and any subsequent owner or owners of the title in subjection of the undivided half of the plantation to the payment of what was due her.
 

 * * *
 

 “So that, when the undivided half of the property was adjudicated to Mrs. Gay, it passed absolutely to her, regardless of the inheritance of half thereof by the minors from their mother, who could not transmit to her heirs, by succession, more rights than she would have acquired on a dissolution of the community by judgment.”
 
 (Italics ours.)
 

 This court has frequently held that although a tutor or a curator may not confess judgment in an action brought against his ward, he may accept service of process and waive citation. Boudreaux v. Lower Terrebonne Refining & Mfg. Co., 127 La. 98, 53 So. 456. See, also, McCrady v. Sebastian, 150 La. 459, 90 So. 760, 762. In the McCrady case the court said: “ * * * there is no provision of law which by reasonable implication denies to the tutor or curator the right to waive service and citation as is accorded litigants generally by article 177 of the Code of Practice * * *. The other articles * * * show conclusively that the tutor or curator acts for his ward in his own name and without necessity for joining the ward. He is therefore the defendant in the sense of the article just mentioned.”
 

 Act No. 57 of 1926 specifically provides that: “ * * *
 
 it shall not be necessary to make the heirs of the deceased spouse parties to said proceedings,
 
 but it shall be lawful to make service of all process, citations, notices of demands, and all necessary services to be made in connection therewith upon the surviving spouse in community, and
 
 said proceedings shall be carried on against said surviving spouse alone.”
 
 (Italics ours.) Furthermore, the Revised Civil Code expressly stipulates that individuals can renounce what the law has established in their favor, in all cases in which it is not
 
 expressly
 
 or
 
 impliedly
 
 prohibited and when the renunciation does not affect the rights of others and is not contrary to the public good. See Article 11.
 

 
 *875
 
 It is our opinion, therefore, that plaintiffs’ contention that their father was not authorized to accept the service of process or to waive all delays and required notices in the seizure and sale of the property is without merit. The charges of fraud and collusion are mere conclusions of the pleader. They are not supported by the facts in the record.
 

 Having reached this conclusion, it necessarily follows that any lack of authenticity in the transfer of the note executed upon was cured by Childs’ action in appearing before a notary public and two witnesses to acknowledge that the executory process might issue in favor of James T. Pruitt and that the property might be seized and sold to pay and satisfy the alleged indebtedness, which he “acknowledged to be due.”
 

 The other points raised by the plaintiffs are also without merit. Under the executory process it is not necessary that the petition and the note executed upon be filed in the court before the matter is presented to the judge and his order authorizing the issuance of the writ of seizure and sale secured. Learned v. Walton, 41 La.Ann. 233, 6 So. 125; Learned v. Walton, 42 La.Ann. 455, 7 So. 723; and Huber v. Jennings-Heywood Oil Syndicate, 111 La. 747, 35 So. 889. Nor can the validity of the proceedings be questioned on the ground that the amount claimed was in excess of the amount due on the note. See the syllabus of the case of Amato v. Ermann, 47 La.Ann. 967, 17 So. 505, to the effect that: “It is not a ground for setting aside a judicial sale that the writ under which the property was sold issued for a larger amount than was due * * See, also, the cases of Lynch v. Kitchen, 2 La.Ann. 843; Gay v. Hebert, 44 La.Ann. 301, 10 So. 775; and Truxillo v. Delaune, 47 La.Ann. 10, 16 So. 642. The debtor’s remedy in such a case is against the seizing creditor. Furthermore, neither the wife nor her heirs had any valuable interest in the property because the community was shown to be insolvent (Luria v. Cote Blanche Co., 114 La. 385, 38 So. 279) and the amount realized from its sale, in excess of the claim of the seizing creditor, was, necessarily, applied toward the liquidation of the amount due the ranking judgment creditor of the community.
 

 For the reasons assigned the judgment of the lower court is affirmed, at appellants’ cost.
 

 O’NIELL, C. J., does not take part.