Lemmon et al. vs. Clark et al.

## No. 9106.

### MISS MARY J. LEMMON ET AL. VS. WM. L. CLARK, ADM., ET AL.

When the tutrix of minor heirs, in her capacity as such, takes possession of and administers the estate of the deceased parent of the minors, without any appointment as administrator, such act is equivalent to the entering into possession of the beneficiary heirs. The tutrix officially represents them alone: her possession is their possession; her acts, within her lawful authority, are their acts. Soye vs. Price, 30 Ann. 93.

If the minor heirs are creditors of the estate of the parent, they cannot, on coming of age, compete with other creditors, before accounting for the movable property and revenues of the estate which came into their possession through their tutrix and which, if consumed for their benefit, would extinguish their debt.

Where an immovable has been donated to a wife by her parents by a private act, defective in form, that defect may be ratified and confirmed by subsequent acts on the part of the heirs of the donors, such as we think are established in this case; but, in any event, the husband who has held the property as the paraphernal estate of his wife and as her agent, cannot raise objections to her title or make his possession the basis of a prescriptive title. His heirs and creditors have no greater rights.

APPEAL from the Twenty-third District Court, Parish of West Baton Rouge. *Matthews*, Judge *ad hoc*.

*David N. Barrow* for Plaintiffs and Appellees.

*Favrot & Lamon* and *Miller & Finney, contra.*

Lemmon et al. vs. Clark et al.

The opinion of the court was delivered by

FENNER, J.  William W. Lemmon and his wife, Elizabeth Chism, died in 1863, leaving a large estate and three children, who were their sole heirs.  The eldest, George C., was of age, but as he afterwards died and as his interest is inherited by the other two, he may be dismissed from consideration.  Mary J. Lemmon and Wm. W. Lemmon, the present plaintiffs, were minors.  Their grandmother, Mrs. Elizabeth Chism, in 1863, presented a petition to the court of the parish, representing the death of the said W.W. Lemmon and wife, and the minority of said children and praying that she be appointed tutrix, that an under-tutor should be appointed, and that an inventory should be taken of the estate of said deceased.

An inventory was taken, Mrs. Chism was appointed and confirmed as tutrix, and Jas. L. Lobdell as under-tutor, the former furnishing a bond for $25,000, with W. D. Winter, as surety.

In her capacity, as tutrix, she took possession of all the property of the successions, and the record does not advise us that any further judicial proceedings were had touching the administration of the property until her death in 1877.

In the meantime, J. W. Burbridge & Co., a creditor of W. W. Lemmon, and of the community, brought suit against the tutrix and recovered judgment against her as possessing, in that capacity, the property of the succession of W. W. Lemmon, but not affecting the separate estate of Mrs. Lemmon, payable in course of administration.

The inventory of 1863 exhibited, besides real estate and slaves, a large amount of personal property belonging to the community, embracing, besides other items of furniture, plantation stock, etc., the following: $936 in U. S. Treasury Notes; 195,000 pounds of seed cotton valued at $15,600; and " a package supposed to contain $13,000, Confederate money, and supposed to have been received from Chas. Parlange in an incomplete transaction about cotton and to belong to said Parlange."

The other items of community movables above mentioned aggregate in appraised value, the sum of $4406 75.

Leaving out of view the package of Confederate money, it thus appears that the tutrix went into possession of nearly $21,000 of movable property, of which no account has ever been rendered.

The real estate inventoried consisted of 640 acres of land comprising a plantation of which 320 acres undoubtedly belonged to the separate estate of W. W. Lemmon, while the other 320 acres are claimed as

belonging to the separate estate of his wife. The tutrix and, since her death, the heirs, have continuously enjoyed the whole of this plantation without any account of the revenues.

As before stated, the tutrix died in February, 1877. Miss Mary J. Lemmon became of age in March, 1877. W. W. Lemmon was emancipated in January, 1878.

In June 1882, Miss Mary J. Lemmon filed a petition praying that an administrator be appointed to represent the succession of her father, W. W. Lemmon, and that a new inventory be taken. W. L. Clark was accordingly appointed administrator and an inventory was taken, the sole property placed upon which is "320 48-100 acres of land with all the improvements and appurtenances thereon," described as S½ of section 4, T 6. R. 11 E., and valued at $1600.

The present suit is brought by Miss Mary J. and W. W. Lemmon against Clark, administrator, in which they aver that they have accepted the succession of their mother and have renounced that of their father; alleging that the latter was indebted to the former in the sum of $12,625, with interest from date of death in 1863, being amount of paraphernal funds of their mother, received by him during marriage and not accounted for; and praying for a judgment against said administrator for said sum, with recognition of their legal mortgage on all the property of the father, dating from receipt by him of said funds.

Averring that Thomas D. Miller, successor and subrogee of J. W. Burbridge & Co., claimed to be a creditor of the succession and had an interest, they made him a party defendant.

Miller resists the claims of plaintiffs on sundry special grounds:

1. He claims that they have accepted the succession of their father, by sundry acts, which we need not notice more particularly than to say that we agree with the judge a quo in the conclusion that the acts referred to were done under, and attended by, circumstances which negative the intent to accept, and that they are of a character which do not, of themselves and in absence of intention, necessarily involve an acceptance.

2. He pleads peremption of the mortgage claimed by plaintiffs.

The conclusion reached on the following point obviates the necessity of considering this question.

3. Miller urges that plaintiffs, through their tutrix, having gone into possession of the entire estate of W. W. Lemmon, including movables far beyond the value of their claim, and having failed to account for the same or for the revenues of the immovables, their claim as creditors

of said estate is extinguished and cannot be urged against the sole remaining asset of the succession to the prejudice of other creditors, without first accounting for those which have been received by them.

Since the decision in the case of Soye vs. Price, 30 Ann. 93, this position is incontestable.

In that case, Mr. Justice Spencer, as the organ of the court, after a full review of the authorities, announced the following conclusions:

" Notwithstanding the numerous authorities cited from our earlier reports, we think it is now well settled that minors (who are beneficiary heirs of necessity) may come lawfully into possession of the estate of their deceased parent without there having been any previous administration thereof. In 4 Ann. 561, Labranche vs. Trepagnier, it was held to be settled that 'the natural tutor or tutrix, *as such*, has a right to administer the succession of the deceased spouse, unless the heirs of age or creditors require the appointment of an administrator.' This was but the affirmance of the same doctrine in effect held by this Court in 1 Ann. 239; 2 Ann. 462; 3 Ann. 502. In Monget vs. Penny, 7 Ann. 134, it was held that 'the creditors of the wife need not provoke the appointment of an administrator to her succession, but may sue the natural tutor of its beneficiary heirs as its representative. See also to same effect 5 Ann. 180; 10 Ann. 534; 14 Ann. 641. These cases clearly recognize the right of the natural tutor of minor heirs of the deceased spouse, in absence of opposition, to take possession of his estate in his capacity as tutor, and to administer it, as other property of his wards, *for their benefit. The possession of the tutor is the possession of the minor and all his acts are in the name and on behalf of his wards.*"

It seems almost needless to say that the use of the term *natural* tutor is merely an accident of the case, and that like principles apply to legal or other tutors. Indeed, in one of the cases quoted, the tutrix was the grandmother of the minors, as in the instant case. Succession of Story, 3 Ann. 502.

The cases quoted by counsel for plaintiffs are all cases in which the tutor held in the dual capacity of tutor and executor or administrator, and it was there held that the functions as tutor were subordinated to those of executor or administrator, in which latter capacity she directly represented the creditors. 4 La. 489. 20 Ann. 513; 1 Rob. 112; 30 Ann. 743.

But here the tutrix acted in that capacity alone, and under the doctrine of Soye vs. Price, represented the minors only, held possession for them, and "all her acts are in the name and on behalf of her wards."

As representative of the beneficiary heirs in possession, creditors of the succession had the right to sue them through her and to recover judgment, restricted, of course, in its operation to the property inherited by them. Whatever she has received and appropriated of that property is, *quoad* creditors, a reception and appropriation by the heirs. If she has wronged the latter, they must look to her personally and to her bond; but, as against creditors, her acts are their acts as far as they were within her lawful powers as tutrix.

Applying these principles to the case before us, we find that these plaintiffs, through their tutrix, have received and possessed this entire estate since the death of their father in 1863. Its presumable revenues are not accounted for. Its movables, of the value of $21,000, have been consumed or have disappeared. And now, at the end of twenty years, when nothing remains except a tract of unconsumable land valued at $1600, they seek to oust the recourse of a *bona fide* and indulgent creditor of their father thereon by springing their own claims as creditors of his succession.

In face of their entire failure to account for the revenues of the plantation and to show that their tutrix did not actually realize from the movables, for their benefit, a sum at least equal to the amount of their claim, their pretensions cannot be countenanced. Their demand must be rejected.

4. We have considered the demand of Miller to the effect that the other half of the six hundred and forty acres of land appearing on the original inventory should be included in the last inventory of W. W. Lemmon's estate. The evidence satisfies us, as it did the judge *a quo*, that this land was given by the parents of Mrs. Lemmon to the latter during her marriage, and was received and held by her husband as her separate paraphernal property; that, although the original act of donation was defective in form, yet we consider that it has been validated and confirmed by sundry acts within the contemplation of C. C. 2274, not necessary to be here particularized, but referred to in the learned opinion of the judge *ad hoc*. At all events, it did not lie in the mouth of W. W. Lemmon, or his administrator or creditors, to deny his wife's title, since it clearly appears that he received and held the property as hers. Still less can prescription be invoked in favor of his succession or the community.

He held the property avowedly as the paraphernal property of his wife and as her agent, as evidenced by numerous acts, but, particularly and conclusively, by his joining in an act of mortgage executed by his wife thereon as her separate paraphernal property.

The other relief asked by him must be denied, without prejudice to his right to demand satisfaction of his debt and sale of the property of the succession of W. W. Lemmon in the succession proceeding.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed; and it is now ordered, adjudged and decreed, that the demand of plaintiffs herein be rejected; and that the reconventional demand of Thos. D. Miller be also rejected, without prejudice to his right to provoke a sale of the property of the succession of W. W. Lemmon and satisfaction of his judgment by proper proceedings against said succession—plaintiffs and appellees to pay costs in both courts.

## DISSENTING OPINION.

POCHÉ, J.  I dissent from that part of the opinion which recognizes the tract of land known as the "Clark Tract," as the separate property of plaintiffs' mother—Mrs. Lemmon.  In my opinion, that tract of land is community property, acquired under the prescription of thirty years.

The act of donation from Judge Chism to his daughter, Mrs. Lemmon, relied upon by plaintiffs, was not made in the form required by law (C. C. 1536), and could not make proof of the title claimed by Mrs. Lemmon's heirs.

The alleged ratification by means of the Act of May 24, 1853, does not justify the conclusion drawn from it.  The language bearing on this point reads as follows:

"Elizabeth Lemmon acknowledges to have received the following slaves and *sums of money* during the lifetime of her father, to wit:"  In the enumeration which follows, I find this item, which is the only statement referring to this subject-matter:

"Paid for Clark's land, $2500."

The donation ratified by that language is not of the tract of land in question, but of a sum of money used towards the payment of the land. The result of that act may be to show a credit of $2500 for paraphernal funds in behalf of Mrs. Lemmon against her husband—but surely not to show a ratification of a donation of land.  Under that construction, and the language of the act admits of no other, the record is barren of any proof of separate title in Mrs. Lemmon, and the possession of thirty years being the only element of title, my conclusion is that the tract of land became, and should be treated as, community property.  As such, it is affected with Miller's mortgage.

Rehearing refused.