The judgment appealed from is, accordingly, affirmed.

PROVOSTY, J., dissents in part.

NICHOLLS, J., takes no part in this case.

---

(53 South. 456.)

No. 17,854.

BOUDREAUX et al. v. LOWER TERREBONNE REFINING & MFG. CO.

(June 10, 1910. Rehearing Denied Oct. 31, 1910.)

*(Syllabus by Editorial Staff.)*

1. JUDGMENT (§ 403*)—ANNULLING JUDGMENT—GROUNDS.

The rule that a judgment will not be annulled for matters showing that the judgment is erroneous or for matters available as a defense to the action does not apply to matters subsequently discovered, which render it against good conscience to enforce the judgment, or to judgments obtained by fraud.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 764; Dec. Dig. § 403.*]

**2. MINORS—JUDGMENT—ANNULLING.**

Under Code Prac. art. 615, authorizing the rescission of a judgment against a minor, and declaring that the article shall not be construed to imply the nullity of a judgment where a minor has been regularly represented, a minor regularly represented is concluded by the judgment.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 314; Dec. Dig. § 110.*]

**3. MINORS AND THEIR TUTORSHIP—ACTIONS—SERVICE OF PETITION—WAIVER OF CITATION.**

A tutor may accept service of petition in an action against his ward and may waive citation.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 439; Dec. Dig. § 28.*]

**4. MINORS AND THEIR TUTORSHIP—JUDGMENT—CONFESSION.**

A tutor may not confess judgment against his ward; but, where he believes that the demand against the ward is well founded, he may submit the matter to the court for decision.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 106; Dec. Dig. § 60.*]

**5. MINORS AND THEIR TUTORSHIP—RIGHT OF UNDERTUTOR TO ACT.**

Under Civ. Code, art. 275, requiring the undertutor to act for the minor when the interest of the minor is in opposition to the interest of the tutor, a tutor cannot represent his ward in any matter in which their interests are opposed, but the minor must then be represented by the undertutor.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 288–293; Dec. Dig. § 62.*]

**6. MINORS AND THEIR TUTORSHIP—RIGHT OF TUTRIX TO ACT.**

Where the questions were whether a debt was due in whole by a widow, who acted as tutrix for her minor children, or was due in part by her and in part by the children, and involved the displacing of a legal mortgage of the children from the property of the widow, so as to subordinate it to other mortgages given by her, the interests of the widow and children were opposed, so that the widow could not act for or represent the children in the litigation.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 118.*]

**7. MINORS AND THEIR TUTORSHIP—ACTION BY TUTRIX.**

Under Code Prac. art. 615, providing that an action to rescind a judgment against a minor cannot be brought by the tutor during the minority of the minor, a tutrix may not maintain a suit to annul a judgment against her wards on the ground that the wards were not well represented in the action in which the judgment was rendered because their interests were opposed to the interests of the tutrix representing them.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 411–418; Dec. Dig. § 118.*]

**8. EXECUTORS AND ADMINISTRATORS (§ 217*)—MANAGEMENT OF ESTATE—CREDITORS.**

Where a plantation was operated by the widow of decedent individually and as the tutrix of her children and by the major children jointly for their joint account as property belonging to them of which they were in actual possession, and on that theory they borrowed money for operating the plantation and executed a mortgage to secure it, the creditor who took the notes of the widow and the heirs individually for the debt, together with the mortgage from them individually, and who sued them individually, could not urge that he was a creditor of the succession of the decedent.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 758; Dec. Dig. § 217.*]

**9. EXECUTORS AND ADMINISTRATORS (§ 3*)—RIGHT TO ADMINISTRATION.**

The rule that, where one or more of the heirs are majors, there must be administration, is subject to the qualification that some heir or creditor demands an administration.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 3–14; Dec. Dig. § 3.*]

**10. EXECUTORS AND ADMINISTRATORS (§ 130*)—TERMINATION OF SUCCESSION.**

The succession terminates when the heirs, whether minors or majors, go into actual possession of the land of the deceased owner without opposition; but until such possession a tutor acting as administrator of an open succession does not possess for the minor heirs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 537; Dec. Dig. § 130.*]

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; W. P. Martin, Judge.

Action by Mrs. Louisiana Boudreaux, tutrix for Laura Boudreaux and others, against the Lower Terrebonne Refining & Manufacturing Company. From a judgment for plaintiffs, defendant appeals. Reversed without prejudice.

Suthon & Wurzlow, for appellant. Harris Gagne and Howell & Caillouet, for appellees.

PROVOSTY, J. Alfred Boudreaux died July 28, 1898, leaving a widow and ten children, eight of whom were minors between the ages of three and eighteen, and leaving property consisting of a sugar plantation, inventoried at $37,100; a half interest in a store, inventoried at $750; a tract of land, inventoried at $2,000; another tract, inventoried at $50; a half interest in another tract, inventoried at $50; and household furniture, inventoried at $250; and leaving a debt of $5,100, which he had recently contracted in the purchase of machinery and mules for the plantation, and other debts to the amount of $1,900. Louis Bush's Sons were the commission merchants of the plantation.

Mrs. Boudreaux knew little, or nothing, of business, and could understand the English language but imperfectly, and barely speak it. There was a cane crop under way. Louis Bush's Sons, the commission merchants of the plantation, sent word to her that she ought to open the succession of her husband. She, accordingly, presented a petition to the court, asking that she be recognized as the surviving widow in community of her deceased husband, and, as such, owner of one half of his estate and usufructuary of the other half, and that her children be recognized as the legal and only heirs, and that she and they be sent into possession, and that she be recognized and confirmed as their natural tutrix. After an inventory had been made, and a certificate of its amount recorded, so as to preserve the legal mortgage of the minors upon the property of their tutrix, the court made an order accordingly.

The legal situation then was that Mrs. Boudreaux, as survivor in community, was owner of one undivided half of the inventoried property, and usufructuary of the other half; and that her children were owners of the naked ownership of this other half; and that she and her children, together, were in possession of the said property; and that she was unconditional debtor of one half of the debts left by her husband (all of which were community debts), and her children debtors of the other half of said debts, each for his or her virile share, the liability of the major heirs being absolute, and that of the minors being subject to the benefit of inventory; and that the succession was closed. Mayronne v. Waggaman, 30 La. Ann. 974; Soye v. Price, 30 La. Ann. 93.

Louis Bush's Sons went on making advances to the plantation for bringing to maturity and harvesting the growing crops and for the living expenses of the family. The result of the operations of the year did not enable Mrs. Boudreaux to reduce the indebtedness existing at the time she took charge. How to meet this indebtedness, and what to do with the plantation, and how to provide for the maintenance of herself and children and for the education of her children, was the problem she found herself confronted with. Whatever she did, she would have to provide for the maintenance and education of her children; for this was an obligation imposed upon her by law, and by her own maternal feelings as well. For discharging this obligation, all, and more than all, she would ever receive from the usufruct of the share of the children would be required. This usufruct, therefore, when coupled with this obligation, was a mere barren right.

This being the situation, she presented a petition to the court, individually and as tutrix of her minor children, in which she alleged that:

"As tutrix of her children she is administering the estate of her late husband, which consists principally of the Front Lawn plantation (which she describes); that said property is a valuable sugar plantation and was cultivated as such by her late husband, Alfred Boudreaux, for a number of years up to the time of his death, which occurred in July, 1898; that

since said date your petitioner has been cultivating and operating said plantation in her aforesaid capacity, and she desires to continue its cultivation, as she is entirely dependent on its profits and revenues to pay the debts of her late husband, to support herself and family, and to maintain and educate her said minor children; that the debts due by her late husband, which she is anxious to discharge, are $4,000 due on a double effect, and $1,100 due on a lot of mules; that, owing to the unprecedented shortage in the crop of last year, the said plantation made no money, and she is without the necessary cash to pay these debts and to continue the planting of crops for the present year, and it is necessary, therefore, for her to borrow the necessary money; that the only security she has to offer is a mortgage on her undivided half interest in the plantation above described, the other half being owned jointly by all her children, including two of age; that it will require an outlay of at least $12,000 in money and necessary supplies to carry on said plantation and make a crop this present year; that she has applied to a commission merchant, who is willing to lend her the said amount, provided a first mortgage, with pledge and privilege on the crop of the present year, can be given on the whole property, said money lender being unwilling to lend the necessary amount on a mortgage given on an undivided interest in said property."

She then alleges her willingness to mortgage her half of said plantation, and the willingness of her two major children to mortgage their interest; that it is to the evident advantage of the minors and, in fact, absolutely necessary, that their interest should be similarly mortgaged; that the advances can be obtained only on the condition that a first mortgage on the entire property be given; and that it is therefore absolutely necessary that the legal mortgage of the minors upon her half of said plantation should be postponed to the said mortgage thus to be given. She prayed accordingly, and that a family meeting be held to give advice in the premises.

The family meeting was duly held, and it recommended that authority be granted to Mrs. Boudreaux, tutrix, as prayed for, with this qualification: "That the interest of each minor be mortgaged for his or her proportionate share of said amount, to wit," $600. The tutrix was authorized to execute the necessary act "with the usual conservatory clauses" for borrowing the money.

What was meant by these "usual conservatory clauses" is not explained; but, on March 10, 1899, Mrs. Boudreaux, individually and as tutrix, and her two major children, executed three notes for $4,000 each, payable, respectively, November 1, December 1, 1899, and January 1, 1900, with 8 per cent. interest from date, and, to secure same, gave a mortgage on the Front Lawn plantation; and Mrs. Boudreaux, as tutrix, postponed the minors' legal mortgage upon her half of the plantation to the mortgage thus given. Mrs. Boudreaux mortgaged her undivided half, and each of the children, both the majors and the minors, his or her one-twentieth interest.

The act contained all the clauses usual in acts between planter and commission merchant for advances; that is to say, it recites that the mortgagors, desiring to obtain advances for the cultivation of the said plantation, pledge the crops and obligate themselves to ship them to the commission merchant, and authorize the latter to attribute the proceeds of the crop to the payment of the debts on open accounts, so that any balance that may be due shall be due on the notes, etc. The proceedings by which Mrs. Boudreaux was authorized to act in the premises for her minor children are specially referred to and made part of the act. The proceedings were duly homologated.

What was the result or outcome of the crop of 1899, the record does not show.

On January 30, 1900, Mrs. Boudreaux, again acting individually and as tutrix, and joined by her two major children, presented another petition, in which she alleged that she and her children "own jointly and are in possession of" the Front Lawn plantation (describing it); that since the death of her husband "she has operated the plantation as surviving spouse and tutrix, administering the es-

tate with the consent of the major heirs and of the creditors of her late husband; that her late husband left a large number of debts, some of "which she has settled, and there still remains due and unpaid the following" (here she gives a list of all creditors, aggregating $6,515.58); "that she obtained the consent of the aforesaid creditors to wait for payment of their claims until the beginning of this year on the promise that the same would then be satisfied, but owing to the short crop of last year she is unable to comply with her promise; that the estate has no funds with which to satisfy these debts, and as the creditors demand payment she will be compelled to borrow the necessary amount to discharge them; that the amount required for discharging them in capital and interest is $7,000."

The petition then, after repeating the allegations of that of the preceding year with regard to the necessity of operating the plantation and of borrowing $12,000 with which to do so, and of holding a family meeting to advise in the premises, prays for authority to borrow the minors' share of this $12,000 and to secure same by mortgage on their interest in the plantation, and renewed in all other respects the prayer of the petition of the preceding year.

The family meeting was duly held, and it made the same recommendation as the year before, except that it recommended, in addition, that the $7,000 be borrowed, and that to secure the loan a mortgage be given on the entire plantation, including the interest of the minors; the interest of each minor to be mortgaged for his or her proportionate share of the two amounts. The petition also asked, and the family meeting and the order of the court authorized, that in borrowing the $12,000 the tutrix consent to the clauses usual in contracts for advances between commission merchant and planter, i. e., for pledge and shipment of crops, and imputation of payments to open accounts, etc.

The mortgages for $7,000 and $12,000, respectively, were duly executed as thus authorized; and the usual clauses authorizing the commission merchants to impute payments to open accounts, etc., were inserted in the act.

At the close of the crop year 1900, the account of the plantation with the commission merchants showed a debit balance of $12,278.78. And there was due the commission merchants, in addition, the two mortgage notes for $7,000 and $12,000, respectively, executed at the beginning of the year, and the taxes, amounting to $639.17.

On the 31st of January, 1901, and at the beginning of each of the years 1902, 1903, 1904, and 1905, Mrs. Boudreaux presented a petition similar to those hereinabove described, alleging the necessity of continuing the operation of the plantation, and of mortgaging her share of it and that of the minors for obtaining money for doing so, and of postponing the mortgage of the minors, and asking for a family meeting to advise in the premises, and each year the family meeting was duly held, and recommended that the tutrix be authorised to do as she prayed, and the proceedings of the family meeting were duly homologated, and the tutrix was duly authorized by the court to proceed accordingly, and notarial acts were accordingly executed; the major heirs joining in the acts. In 1900 the present defendant, the Lower Terrebonne Refining & Manufacturing Company, succeeded Louis Bush's Sons as commission merchants of the plantation. The proceedings of one year are practically a repetition of those of the preceding year, dates and amounts changed, except that as the heirs would reach their majority they would participate in their own names, instead of their tutrix acting for them, and except that in the proceedings for the years 1904 and 1905 the other lands of the succession were asked to be mortgaged as well as the plantation, and except, also, that in the family meeting proceedings for the

year 1901 and 1904 nothing was said about postponing the legal mortgage of the minors on the property of the tutrix to the $12,000 mortgage given for the advances; so that the clause in the act of mortgage for those years agreeing to such postponement was inserted without having been authorized by either family meeting or court.

The plantation account at the end of the crop year 1901 showed a credit balance of $5,330.59, with unsold sugar and molasses on hand valued at $900, but with the $7,000 and $12,000 mortgage notes still unpaid, together with another mortgage note for $4,737.56, and the taxes amounting to $661.55.

The account of the crop year 1902 showed a credit balance of $6,996.05; but with the two $7,000 and $12,000 mortgage notes still unpaid, together with one mortgage note for $10,000 and the taxes, amounting to $618.92.

The account of the crop year 1903 showed a credit balance of $1,780.16; but with the $7,000 and $12,000 mortgage notes still unpaid, together with one mortgage note for $5,200, and another for $10,000, and the taxes, amounting to $539.45.

The account of the crop year of 1904 showed a balance account; but with the $7,000 mortgage note still due, and the $12,000 mortgage note reduced to $7,632.81, and the $12,000 mortgage note executed at the beginning of the year 1904 due, together with taxes.

The account of the crop year 1905 showed a credit balance of $6,912.67, but with the following mortgage notes due and unpaid:

$ 7,000 00
7,632 81
12,000 00
12,000 00
―――――――
$38,632 81

Also, $2,562.49, for the taxes of the several past years, which had not been charged to the plantation account. As the commission merchants paid these taxes, each year, they had themselves subrogated to the rights of the state and parish.

So large was this debt that the commission merchants were unwilling to go any further making advances on the place, unless there should be a settlement of accounts and a judgment closing up the old business. They proposed to Mrs. Boudreaux that this should be done, and that the $6,912.67 to her credit should not be attributed to the reduction, or partial payment, of the mortgage note that she and her children had given for the year's advances, but should be kept by her to make her crop of 1906. This, Mrs. Boudreaux and the heirs of age consented to.

The heirs of age, namely: Albert, Denis, Annette, Angele Boudreaux, and Myrtilla Boudreaux, wife of A. J. Dugas, accepted service of petition and waived legal delays, and confessed judgment. Mrs. Boudreaux, for herself individually, did the same. For the minors, she signed the following, written at the foot of the petition:

"On behalf of the minors, Davis, Laura, Anita, Florence and Lucille Boudreaux, defendants in the above entitled and numbered suit, I hereby accept service of within petition, waive citation and all delays, and submit the above cause to the court."

The case was fixed for trial, and the notes and acts of mortgage and tax receipts with subrogation of taxes were offered in evidence, together with the yearly accounts for 1900, 1901, 1902, 1903, 1904, and 1905, and testimony was offered to show that these accounts were correct, and had been regularly furnished each year and not objected to; and on June 1, 1906, judgment was rendered against Mrs. Boudreaux, for one half, and against each of the other defendants for one-twentieth, of $41,195.30, with 8 per cent. interest from January 1, 1906, and recognizing and ordering enforced a mortgage for the said amount as a whole on all the property of Mrs. Boudreaux and the other defendants as a whole, and also recognizing and decree-

ing to be in full force the subrogation of the plaintiff to the rights of the state and parish, for the said taxes paid by the said plaintiff, and, finally, decreeing a preference in favor of said mortgage over all others and particularly over the legal mortgage of the minors upon their mother's half of the property.

In the present suit, Davis Boudreaux, now of age, and three of the other heirs, still minors, appearing through their tutrix, seek to annul said judgment. The petition is lengthy. It gives a full history of the whole matter, and then proceeds as follows:

"Petitioners show that upon said petition their said co-owners accepted service, waived citation and all legal delays, and confessed judgment as prayed for, and that their tutrix on their behalf accepted service thereof, waived citation and all legal delays, and thereupon, without default or contest of any kind, without notice to undertutor, judgment was entered against your petitioners as prayed for.

"That said judgment is null and void and should be set aside for the following reasons:

"(1) Because their mother having qualified as their tutrix and having caused herself to be sent into possession of the estate of their father, including Front Lawn plantation herein described, as owner of one half and as usufructuary of the other half, was without right or power to continue the plantation operations thereof in partnership with her minor children.

"(2) That your petitioners could not become surety for her or liable for any debts contracted by her as owner and usufructuary.

"(3) Because as usufructuary she owed the taxes due on the property, and said judgment imposes those taxes on your petitioners.

"(4) Because the said tutrix was without the power to postpone the legal mortgage in favor of her children resulting from her appointment as natural tutrix to any conventional mortgage given by her for advance to cultivate the property of which she was the owner and usufructuary.

"(5) Because if it be held that upon advice of a family meeting she had that right, which is denied, neither the prayer for the authority to effect the mortgage of date April 8, 1904, nor the procès verbal of the family meeting, show any such authority, prayed for nor obtained to subordinate said legal mortgage in favor of minors to said conventional mortgage of date April 18, 1904.

"(6) Because neither the prayer for the authority to effect the mortgage dated February 20, 1901, nor the procès verbal of the family meeting, nor the decree homologating said family meeting, authorize said waiver of said minors' legal mortgage in favor of the said conventional mortgage, and because the family meeting agreed to the imposition of burdens upon said minors which are not prayed for in the petition, nor granted in the order convoking said family meeting.

"(7) Because the entire indebtedness under the mortgage of February 16, 1900, for $7,000 was wiped out by the proceeds of the sale of the crop of that year.

"(8) Because the mortgage for $12,000 dated February 20, 1901, was entirely wiped out and liquidated by the proceeds of the crop of the year 1901.

"(9) Because the entire indebtedness under the mortgage of April 18, 1904, was wiped out and liquidated by the crop of 1904.

"(10) Because the entire indebtedness under the mortgage for $12,000 dated April 26, 1905, was wiped out and liquidated by the crop of 1905.

"Now your petitioners show that they are helpless minors, wards of the courts, and that they are entitled to all equities in the premises.

"(11) Because, at the time that said judgment was rendered according to the evidence offered by the plaintiff, the plaintiff had on hand to the credit of Mrs. Boudreaux the sum of $6,912.67.

"(12) Because all of the proceedings had in the probate No. 904, entitled Tutorship of the Minors of Alfred Boudreaux, by which it was sought to subordinate the minors' prior legal mortgage against the property of their tutrix to the conventional mortgage declared upon in No. 6509, entitled the Lower Terrebonne Refining & Mfg. Co. v. Mrs. Alfred Boudreaux et al., and which said notes constituted the bases of judgment herein attacked, and which subordination of the minors' mortgage to said conventional mortgage, as recognized in said judgment, is ultra vires and in direct opposition to textual articles of the Civil Code, and said family meeting were without power to recommend said subordination of said minors' mortgage, and the court was without power to grant the order subordinating said minors' mortgage to said conventional mortgages as set up in the various procès verbals of the several family meetings.

"Your petitioners show that Mrs. Alfred Boudreaux is an old woman with no business experience of any kind, unlearned and ignorant of her rights or her duties as usufructuary and tutrix.

"That in all her transactions with the Lower Terrebonne Refining & Manufacturing Company she placed implicit confidence and trust in the officers of the corporation, and was guided in all of her acts as tutrix of her minor children, and as owner and usufructuary of the Front Lawn plantation, by their advice and under their directions."

Defendant filed an exception of no cause of action, in so far as the suit is brought by the tutrix and is predicated on the allegation that the minors were not well defended in

the suit against them. Defendant also filed exceptions of res judicata and estoppel. In its answer the defendant, after the general denial, averred that the debts were incurred by Mrs. Boudreaux in her capacity of tutrix administering the succession of her deceased husband, and were valid, and that the judgment was rendered contradictorily "and cannot now be successfully attacked."

The present suit being an action in nullity of judgment, plaintiffs cannot be allowed to rely upon matters which would only go to show that the judgment is erroneous—not that it is null. Matters that could have been set up as a defense to the merits of a suit cannot be set up as grounds for annulling the judgment rendered in such suit. The reason is that the judgment conclusively negatives all such matters. It is res judicata of them all. After a judgment has been rendered, inquiry into the law and facts involved in the merits of the case is no longer possible, except by appeal. Taliaferro v. Steele, 14 La. Ann. 656; Landry v. Bertrand, 48 La. Ann. 48, 19 South. 126; Calhoun v. Mechanics' & Traders' Bank, 30 La. Ann. 793. This does not apply, of course, to matters subsequently discovered, or to judgments obtained by fraud. But in the present case the plaintiffs do not allege fraud, or any matter discovered since the rendition of the judgment which would make it against good conscience to enforce the judgment.

We cannot agree with the learned counsel for plaintiff that under article 615, Code Prac., a minor may cause to be rescinded any judgment by which he has been aggrieved, even though, in the suit in which the judgment was rendered, he was regularly represented by his tutor, or, where the tutor had an adverse interest, by his undertutor.

If it were so, the situation would be that a judgment against a minor would remain in suspense until the prescriptive period for rescission had expired, which, in certain cases, might mean more than 20 years. Article 615 takes the precaution to add:

"Provided, that this article shall not be taken or construed to imply the nullity of a judgment where a minor has been regularly represented in a suit according to law."

That is to say that, where the minor has been regularly represented, he stands in no better position than anybody else for annulling the judgment. This provision was added to article 615 by Act April 7, 1826 (Laws 1826, p. 172, § 12); and, doubtless, for the very reason that the article would otherwise have been open to the construction now contended for by plaintiffs.

If, therefore, the minors were properly represented in the suit in which the judgment now sought to be annulled was rendered, the said judgment concludes them. Plaintiffs contend that their tutrix could not accept service of petition and waive citation and legal delays, for the reason that a tutrix is an agent, whose powers, as defined and limited by law, do not include authority to waive or renounce any of the rights of her ward.

We cannot adopt that view. We can see no good reason why a tutor should not accept service of petition and waive citation, and thereby save unnecessary costs to his ward. Such matters form no part of the defense to the suit.

Next, the plaintiffs contend that a pleading which, like that filed by Mrs. Boudreaux in the suit against her wards, neither admits nor denies the demand of the plaintiffs, but merely submits it to the court for decision, is not a joining of issue such as can stand in the place of a joining of issue by default.

Again, we cannot agree with plaintiffs. We do not think the law requires a tutor, or anybody else, to deny the verity of allegations known to be true, or to make a defense to a suit known to be defenseless. A tutor has no authority to confess judgment; but we can discover no good reason why, if believ-

ing a demand against his ward to be, in law and in justice, well founded, he should be required to come and do in court what ordinary honesty would preclude his doing out of court, namely, contest the just demand. The proper course to pursue in such a case is to submit the matter to the court, as Mrs. Boudreaux did in the present instance. Such an answer was held in Bayhi v. Bayhi, 35 La. Ann. 527, to be equivalent to an issue joined by ordinary default.

Next, the plaintiffs contend that there was an opposition of interest between them and their tutrix, upon certain issues of the case; and that, therefore, the proper person to have been cited to represent them upon the said issues was their undertutor.

The tutor cannot act for, or represent, his ward in any matter in which their interests are opposed. The minor must then be represented by the undertutor. Civ. Code, art. 275.

One of the issues to which the said suit against the minors gave rise is the question so strongly pressed in the present suit, namely, whether the debts growing out of the operation of the plantation were not the debts exclusively of Mrs. Boudreaux as usufructuary, in which her children, as holders merely of the naked ownership of the plantation, had no part. Without undertaking now to pass upon that question, or even upon the question of whether there was any debt at all, we will say that upon the question of whether the debt, if one existed, was due in whole by the tutrix or in part by her and in part by the minors, there was clearly an opposition of interest between the tutrix and her wards; for the tutrix was relieved of the debt to the extent that it was made to rest upon her wards.

Another of the issues arising in said suit upon which there was such opposition of interest was that involving the displacing of the legal mortgage of the minors from the property of the tutrix, so as to subordinate it to other mortgages given by the tutrix. On this issue, also, the minors should have been represented by their undertutor.

We think, however, that the defendant is right in contending that where the ground of nullity, or rescission, is that the minor was not properly represented in the suit in which the judgment was rendered, the suit in rescission cannot be maintained by the tutor of the minors; at all events, not by the same tutor who was tutor at the time the judgment was rendered. The same article 615 expressly so provides:

"Nor can it be brought by the tutor during the minority of his ward."

The exception of no cause of action must, therefore, be maintained, and the suit of the plaintiffs dismissed in so far as the suit is brought by the tutrix and is predicated on the allegation that the minors were not well represented in the suit against them.

We cannot agree with the contention of defendant that the property of the succession of Alfred Boudreaux continued to be dependent upon the ideal being, the succession of Alfred Boudreaux, deceased, and in the possession of that succession, through its legal representative, Mrs. Boudreaux, tutrix administering, or acting administratrix, and not in the possession of Mrs. Boudreaux and her children, individually. That contention is simply in open and direct opposition to the facts of the case. The plantation was being operated by Mrs. Boudreaux individually and as the tutrix and legal representative of her children and by the major children jointly for their joint account and benefit, as property belonging to them, of which they were in actual possession; and it was on that theory that they borrowed money for operating it, and that they mortgaged it. If the property had continued to be dependent upon the succession of Alfred Boudreaux, and in the possession of its administrator or legal rep-

resentative, the cultivation of it would have had to be for the benefit of the succession, and the money for operating it would have had to be borrowed in the name of the succession, and the mortgages would have had to be given by the succession. We do not see how, after having taken the notes of Mrs. Boudreaux and the heirs individually for the debt, and taken mortgages from them individually, and sued them individually, the defendant could be listened to for a moment to say that the borrower and debtor was the succession, and not Mrs. Boudreaux and the heirs individually.

True, in Blake v. Kearney, 30 La. Ann. 388, this court held that, where one or more of the heirs are majors, there must be an administration. But that decision, in order to be reconcilable with Soye v. Price, 30 La. Ann. 93, must be taken with the qualification that this is so only where some one— heir or creditor—is demanding that there be an administration. The doctrine of Soye v. Price is that the succession terminates when the heirs (whether minors or majors) go into actual possession without opposition. There is nothing contrary to this in Scarborough, Tutorship of, 43 La. Ann. 315, 8 South. 940. The court there said:

"It does not appear that the minors have entered into possession. Until this fact is made to appear, we cannot hold that a tutor, acting as administrator of an open succession, does not possess for the heirs."

Nor is there anything contrary to it in Succession of Barber, 52 La. Ann. 960, 27 South. 361. The doctrine of that case is that:

"The maxim le mort saisit le vif does not apply in the case of irregular heirs, who, differently from legal heirs, cannot take possession without an order of court, or by an ex parte order, but only in virtue of an order rendered contradictorily with some legal representative of the succession."

In Lemmon v. Clark, 36 La. Ann. 744, upon which the decision in the Scarborough Case is largely founded, the succession had never been administered and settled; and yet the court held that the tutor had possessed for the heirs, and not for the succession.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the suit of the minors Laura, Anita, and Lucille Boudreaux, represented herein by the tutrix, be dismissed, without prejudice to their right, on their becoming of age, to sue for the same relief obtained by their brother, Davis Boudreaux, in the present suit; and it is further ordered, adjudged, and decreed that the plaintiff Davis Boudreaux have judgment against the Lower Terrebonne Refining & Manufacturing Company and against the People's Bank of Houma, subrogee, annulling the judgment obtained against him by said company in the Twentieth judicial district court in and for the parish of Terrebonne, on June 1, 1906, in suit No. 6,509 of the docket of said court, and restoring matters between said Davis Boudreaux and said company to the same situation in which they were before the rendition of said judgment. The costs of the lower court to be paid, half by the minors and half by defendant; the costs of the appeal to be paid by the minors plaintiff Laura, Anita, and Lucille Boudreaux.