LAND, J.
The plaintiffs, William F., Robert H., and Frederick M. Krone, as heirs of their mother, Louisa M. Voss, wife of William H. Krone and as heirs of their predeceased brother, Julius Krone, sued to recover one-fifth of one-half interest and one-twenty-fifth of one-half interest each in t<?n parcels of real estate which had belonged tO‘ the community formerly existing between their father and mother and which after her death had been adjudicated to their father as surviving husband.
Plaintiffs also sued to annul said adjudication, and also a special mortgage executed by their father, as tutor, in lieu of the legal mortgage in favor of the five minor heirs of the deceased mother and wife. The-petition alleges that said adjudication and said special mortgage were null and void by reason of certain alleged illegalities in the proceedings, which we will hereinafter consider after stating the facts of the case.
The numerous defendants filed exceptions, pleas, and answers, and after a trial on the merits judgment was rendered in favor of the defendants, and plaintiffs have appealed.
The record in the succession of Louisa Mary Voss discloses the following proceedings:
In November, 1893, Wm. H. Krone, the-surviving husband, presented his petition to the civil district court for the parish of Orleans, representing that his wife had died, leaving five minor children, and that the petitioner desired to be confirmed as their natural tutor, and concluding with the usual prayer for an inventory. Thereupon the judge ordered that an inventory of the decedent’s estate be taken by Fred. Zengel, notary public, assisted by Joe Garidel and E. Blanc, appointed as appraisers to assist thereat.
The inventory taken pursuant to the order by said notary and appraisers showed total community property, real and personal, appraised at $39,159.72, and the half interest of the succession of the deceased wife therein appraised at $19,578.86.
An extract from said inventory showing *669 the value of the property belonging to the said minors or in which they were interested was duly recorded, so as to operate as a legal mortgage on the real property of the tutor.
W. H. Krone was duly confirmed and qualified as natural tutor of his minor children, and Henry Haag was duly appointed and sworn as their undertutor.
On May 24, 1894, William H. Krone, as natural tutor, presented a petition to the court stating that he filed therewith an account between himself and said minors for the purpose of fixing and establishing their interest in their mother’s estate, and to serve as a basis for proceedings in adjudication and in a special mortgage to be thereafter taken.
William H. Krone swore to the account as correct and exact in every particular, and the undertutor, after a careful examination, approved the- same.
By reason of the approval of the under-tutor, and the law and the evidence being in favor of the accountant, a decree was rendered homologating the account and fixing the interest of the heirs in the community property at $3,349.76 each, or $16,748.83 for the whole.
The account showed debts and charges which reduced the interest of the succession of the wife in the community property to said sum of $16,748.83.
The tutor then petitioned for the adjudication to him of all the community property at the inventory value thereof and for the substitution of a special mortgage for the general legal mortgage covering all his real estate. Both petitions were referred to a family meeting, which, with the concurrence of the undertutor, advised that the adjudication be granted as prayed for; but as to the special mortgage other property was substituted, which the experts appointed by the court appraised at $21,300. The family meeting advised that the tutor be permitted to give the special mortgage on said substituted property.
Judgment was rendered approving and homologating the deliberations of the said family meeting, and accordingly adjudicating all the community property by specific description to William H. Krone, and authorizing the said William H. Krone to execute a special mortgage in favor of' his minor children on certain described real estate, as recommended by said family meeting.
This special mortgage was executed on July 18, 1894, and, after having been duly recorded, was accepted by the court in lieu and stead of the general and special mortgage existing against the community which were canceled pursuant to order of the court.
William H. Krone married again, and died in April, 1904, at his domicile in St. Tammany parish, leaving one child, Eva, the issue of his second marriage. By last will he left his estate to his six children. His widow qualified as dative executrix and administered the succession, which was involved in debt. The inventories showed that the deceased owned eight pieces of property in the city of New Orleans, purchased during his first marriage, and-real estate and personal property in the parish of St. Tammany. It was found necessary to sell the lot in the city of New Orleans situated in square bounded by Baronne, Carondelet, Washington, and Sixth streets and the real estate in St. Tammany parish to pay debts.
The dative executrix filed her final account, showing a balance of $3,001.63 due her, but stated that she was willing to reserve her right to claim this amount in a partition of the estate. This account recognized the children of the first marriage as having a special mortgage for $16,748.83. The account was duly homologated.
The next step taken was the filing of a petition by Mrs. Krone as dative executrix *671 and natural tutrix of her minor child, Eva, and of the I-Iibernia Bank & Trust Company as tutor of the five minors of the first marriage, praying that said six minors Be recognized as the sole and only forced heirs and legatees of the late William H. Krone in the proportion of one-sixth each, and be sent into possession of all property belonging to his estate, and more especially of the seven certain pieces of real estate situated in the city of New Orleans.
There was judgment recognizing said six minors as the sole and only forced heirs and legatees of the decedent, and sending them into possession as prayed for, and recognizing them as owners of the property specially described in the petition.
The Hibernia Bank & Trust Company in 1905 took possession of the properties in the city of New Orleans, and has ever since administered the same for the use and benefit of said minors, as shown by the account in the transcript.
As a defendant, said company excepted to the suit, and denied the allegations of the petition.
Mrs. Eva Krone, for herself and as tutrix of the minor Eva, also excepted and denied all the allegations of plaintiffs’ petition.
William H. Krone on June 30, 1894, sold one lot not covered by the special mortgage of the minors to John E. King, who in July, 1905, sold the same property to Rene Couturie, the present owner, who was called in to defend the suit by his tenant. Couturie, in turn, called in his vendor, John E. King.
In November, 1903, William H. Krone sold another lot not covered by the special mortgage of the minors to Peter Gallagher, who in April, 1904, sold to the Emilien Perrin Company, and from said company by mesne conveyances the lot passed to Alicia Jumonville.
Another lot was sold by order of the district court of St. Tammany parish to pay the debts of the succession of William H. Krone, as already stated, and was adjudicated to Otto T. Maier for the price of $8,100.
The remaining lots, seven in number, are still subject to the special mortgage of the plaintiffs and their brother, and, as stated supra, are in the possession of the Hibernia Bank & Trust Company, which holds them for the plaintiffs and their minor brother.
Plaintiffs seek to annul the adjudication of the community property to their father and the special mortgage granted by him in their favor, and to reinstate the general mortgage in their favor, and, as heirs of their mother, to recover three-fifths and three twenty-fifths of the property described in the petition.
Omitting arguments and conclusions of law, this action is based on relevant allegations of fact as follows:
That William H. Krone, with fraudulent intent, withheld from the inventory filed May 21, 1894, community assets consisting of $3,-500 in credits and $4,000 in cash; that the said William H. Krone, in his account filed May 24, 1894, fraudulently charged the community with fictitious debts and charges aggregating $4,211.07, thereby reducing the interest of the minors in the inventoried community property from $19,579.86 to $16,784.-83; that the said William H. Krone omitted from said account the burial lot, appraised at $150, and charged the funeral expenses, amounting to $300, to the minors; and that the charges on said account for expenses of last illness, funeral and law charges, which were really incurred, if ever paid by him, were so paid out of the funds of the community in his hands not placed on said inventory.
That the said account was homologated ex parte, without proof of its correctness, and without receipts or vouchers showing payments.
That the decree of adjudication to their *673 father of July 12, 1S94, was illegal, null, and void, because:
l't was made ex parte, without any trial or proof, and without any reasons assigned, in violation of article 91 of the Constitution of this state.
It was not ordered to be made, and was not made at the price of an estimation made by experts appointed by the judge.
That the property secondly described in said decree was adjudicated -to said William H. Krone at the inventory value of $7,779.36, notwithstanding his previous affidavit of May 24, 1894, that it was worth 25 per cent, over $16,74S.83.
The the property was illegally adjudicated to the said William H. Krone at its appraised value according to the inventory of the succession.
That said order of adjudication included the burial lot at $150 on the inventory, when same was not included in the account of May 24, 1894, nor in the amount for which the adjudication was ordered to be made.
That said adjudication is null, because no act of adjudication conveying said property to plaintiff’s father was ever made or recorded as required by section 2.363 of the Revised Statutes of this state.
Plaintiffs alleged that the special mortgage of July 18, 1894, was illegal, null, and void:
(1) Because the property tendered for special mortgage belonged to the community, and a half interest therein was vested in said minors.
(2) That the experts estimated the value of the property as an entirety at $21,300, and their father’s interest therein amounted only to $10,650, whilst the rights and interest of the minors to be secured amounted to $16,-748.83.
(3) On other grounds hereinafter stated.
Alfred E. Krone, the minor brother of the plaintiffs, was made one of the defendants, through his tutor, the Hibernia Bank & Trust Company, which appeared and excepted to the petition, and filed an answer denying all the allegations therein contained. Mrs. Eva Krone, individually and as tutrix, also filed exceptions, and answered.
The present owners of the three lots which were sold as above stated, and their warrantors, appeared and filed exceptions and pleas, among others prescriptions of 1, 2, 4, 5, and 10 years, and estoppel based on the ground that the plaintiffs had accepted the succession of their father, and had received money therefrom in their character of heirs, and were thereby estopped from assailing any of his acts or deeds, and were bound to warrant the titles of the defendants derived from their father and his estate. '
All of the exceptions were overruled, except that of prescription, which was referred to the merits.
The case was tried, and judgment was rendered in favor of the present owners of the three lots, and the rights of the widow, heirs, and other defendants were reserved.
The reasons for judgment filed by our learned brother below show that he found that the evidence adduced by the plaintiffs failed to prove that the account filed by their father was false and incorrect, or to support the charges of fraud made in the petition. As to the proceedings the judge was of opinion that they appeared to be regular on their face, and that innocent purchasers were protected by the orders and decrees of the court. Inter alia, the judge said:
“As against purchasers from Mm by value, and acting in good faith on the record and decree, which on their face are regular, the complaints of the plaintiffs are unavailing.”
“Distinguished lawyers of the bar examined the titles under which the defendants bought the properties sued for herein, and pronounced them good, and I approve their opinion.”
Having found the proceedings and decrees to be regular on their face, the judge did not pass on the pleas of prescription.
After a perusal of the evidence, we are not *675 prepared to say that the judge erred in holding that the plaintiffs- had failed to prove that the account of May 24, 1S94, was false' and incorrect, or any other allegation of fraud against their father. The account was homologated by a judgment of the court which is presumed to be correct. Even if fraud had been proved, the rights of bona' fide purchasers would not be affected. See Chaffe v. Minden Lumber Company, 118 La. 753, 43 South. 397.
The case before us must be decided on the face of the record in the succession of Louisa Mary Yoss, the first wife of William H. Krone.
[1] The whole of the community property was adjudicated to the father under article 343 of the Civil Code. See Lyons v. Woman’s League, 124 La. 222, 50 South. 18. “Adjudication,” as used in this article, means “an assignment by judgment.” The decree of adjudication transfers the title, and is “the act of adjudication,” which Rev. St. § 2363, requires to be recorded in the mortgage book of the parish. See Succession of Burguieres, 104 La. 50-52, 28 South. 883. “The adjudication to the surviving parent was a sale. The estimate of the inventory was a price.” See Heirs of Bedell, 21 La. Ann. 644. The only irregularity apparent on the face of the record is that the succession inventory, which has just bfeen completed, with the assistance of two appraisers appointed by the judge and sworn by a deputy clerk, was adopted as the basis of valuation on the recommendation of the family meeting. Under article 343 as it existed in 1894, it is contended that two experts should have been appointed and sworn by the judge for the special purpose of appraising the property to be adjudicated. This should have been done, according to the then letter of the Code, but, as the valuations were made by appraisers appointed by the judge, such appointment was a substantial compliance with the legal requirement. The swearing of the appraisers by the deputy clerk seems to us to have been an innocuous departure from the letter of the law.
[2] It has been long settled in our jurisprudence that a judicial adjudication of community property to the surviving spouse, is-a probate decree, which will not be annulled as to third persons for informalities anterior to its rendition. See Orr v. Thomas, 3 La. Ann. 582. See, also, Ferrier v. Ferrier, 9 La. Ann. 428, in which it was held that the failure of the judge to appoint the appraisers was an informality. In that case the court pointed out that, under the statute of 1826, article 615 of the Code of Practice had been amended so as not to imply the nullity of a judgment against a minor regularly represented in a suit according to law. In the same case the court said that a minor on coming of age should not be heard in the prayer to burden the property of his parent with a general mortgage, when the existing special mortgage is ample, because the preliminary steps in family meeting may have been irregular.
The record of the succession of Wm. H. Krone shows that the plaintiffs and their brothers were adjudged to be mortgage creditors of the estate of their father for the amount secured to them by the special mortgage of 1894, and that later they, on the petition of their tutor, were, conjointly with their half-sister, Eva, recognized as sole heirs and legatees, and, as such, sent into possession of the real estate embraced in said mortgage by judgment of the court.
The evidence shows that said real estate has ever since been held by the Hibernia Bank & Trust Company for the use and benefit of the six heirs so recognized and sent into possession.
The decrees referred to are not assailed in plaintiffs’ petition, and have never been set aside, as far as is shown by the record.
*677 [3] In a recent case this court held that a minor regularly represented is concluded by the judgment.
The court, inter alia, said:
“Where the minor has been regularly represented, he stands in no better position than anybody else for annulling the judgment.” „
See Boudreaux Case, 127 La. 98, 112, 53 South. 456.
The probate decrees referred to conclude the plaintiffs from disputing the title of the father to the real estate in question, and the conjoint ownership of their half-sister, Eva Krone.
[4] However, we will consider the objection that the decree of adjudication is null and void on its face, because it assigns no reasons for judgment. Const. 1879, art. 87. The decree, after homologating the proceedings of the family meeting, proceeds “accordingly” to adjudicate the community property to the surviving husband as advised and recommended by the meeting. The decree is in the usual form, and on its face was rendered by reason of the advice of the family meeting. As well said by the veteran judge below:
“The judge had the whole record before him, and his judgment was only to complete the administrative steps that had been taken. * * *
“He acted on these record representations in due course, and was not obliged to assign reasons, other than appeared on the face of the record.”
The three lots which were sold were not included in the special mortgage in question.
The objection to the special mortgage that plaintiffs’ father owned only a half interest in the property hypothecated is predicated on the alleged nullity of the adjudication.
The objection that appraisement and the special mortgage did not provide for interest to accrue is without merit.
This special mortgage was given under article 344 of the Civil Code to secure the price of the adjudication. Under article 325, C. C., it was for the family meeting to determine whether the property offered was of sufficient value to secure the rights of minors in capital and interest.
[5] There was little or no interest due on the price of adjudication, and, as the appraisement exceeded by more than 25 per cent, the “amount” due the minors, it was sufficient for all purposes under O. C. art. 331.
The act of mortgage expressly included all interest to accrue. ,
The further objections that the decree allowing the substitution of the special for the general mortgage was without trial or proof or reasons are without merit.
The said decree was based on the deliberations, advice, and recommendations of a' family meeting, approved by the undertutor, and homologated by the court.
The judgment below is in favor of the defendant owners and bona fide purchasers, but reserved the rights of all the other defendants among themselves.
Judgment affirmed.
MONROE, C. J., recused for having ruled in the matter while presiding as judge of the civil district court.