This is a suit instituted by the seven children of Emile Cormier and his deceased wife, Odallie Dupuis, in which they attack the proceedings involving a sale by their father, after the death of their mother, when he was acting as their natural tutor, of their undivided one-half interest in certain community property which had been acquired during the marriage, the sale having been made under order of Court by private act under the purported authority of Act No. 77 of 1928 (the present law — Act No. 209 of 1932). The suit is in the nature of a petitory action in which plaintiffs pray that they be recognized as the owners of an undivided one-half interest in the said property and that the reservation of the oil, gas and other minerals by a one time owner of the property who subsequently sold it, be cancelled from the records of the Parish insofar as it affects their undivided one-half interest.
The recitals of the petition are somewhat lengthy but a brief resume might be given as follows: On August 28, 1926, during the marriage between the plaintiffs' father and mother, their father acquired an eighteen acre tract of land adjoining the City of Crowley. It is not disputed that it became community property. The purchase price was $2500 of which $1000 was paid cash and the balance represented by ten promissory notes of $150 each, secured by a vendor's lien, privilege and mortgage on the property. These notes bore interest at the rate of eight per cent and were payable from one to ten years after date. Their mother died in October, 1928. Her succession was opened and an inventory taken. In the inventory the tract of land was appraised at $1800. There was an old building situated on the property at the time, which was appraised at $100 and there was some other movable property appraised at $175.
More than a year after his wife's death, Emile Cormier, who had qualified as natural tutor of his children who were then minors, petitioned the court to authorize him to sell the tract of land at private sale as provided for by Act No. 77 of 1928. It appears that he made all the necessary allegations in his petition, among others, that nine of the ten notes remained unpaid with interest bearing on the whole amount for two years and that he was unable to pay the interest as well as the taxes due for the year 1929 on the property. He alleged also that the holder of the note was demanding payment leaving the inference that if they were not paid, foreclosure would take place. He averred that there was a party by the name of Alphe LeBlanc who had offered to purchase his undivided half of, as well as the minors' interest in the property, for $1566, that being the amount of the notes then due with interest for two years, and in addition would pay the taxes that were due, the attorneys' fees and all costs of the succession, making the consideration approximately $1900. He alleged that a sale under private act under the existing circumstances would save costs and expenses, relieving him and his children of the debt and he asked that their under-tutor Aurelien Cormier, concur in the recommendations that the sale be made in that manner. The under-tutor appeared in answer to a rule and concurred, after which the matter was presented to the district judge who after considering it and having found the law and the evidence in favor thereof signed a judgment on November 18, 1929 authorizing the sale. The sale took place on that same day and on December 15, 1930 the purchaser Alphe LeBlanc transferred the property to James A. Gremillion. Gremillion held it until December 7, 1936, when he sold it to Hebard Thibodeaux, reserving the minerals, and then Thibodeaux sold portions of the land to various parties, all of whom with him and Gremillion are made parties defendant herein.
The grounds of attack on the proceedings leading to the sale by their tutor are that plaintiffs' interest, as minors at the time, could not be sold at private sale to pay debts; that as the provisions of Act No. 77 of 1928 contemplated the sale of the interest of a minor or the entire property belonging to the minor, the entire property in which the minors owned an interest *Page 623 
could not be sold; that the proceedings held do not show that evidence was taken to prove that the sale was to the advantage of the minors; that the court did not fix a minimum price; that the sale was not for the benefit of the minors as they received nothing; that a tutor cannot sell real estate belonging to a minor for any other purpose except to effect a partition and finally that the property was worth far more at the time of the sale than the consideration paid for it. There was another ground of attack made during the trial of the case to which proper objection was made and correctly sustained as the same had not been pleaded.
The defense presented by all the defendants is a denial of all the charges on which the proceedings are attacked and various pleas of prescription were also filed. These last pleas vary with regard to certain of the plaintiffs according to their respective ages.
The trial judge rendered judgment in favor of the defendants and dismissed the plaintiffs' suit at their costs whereupon this appeal was taken.
There isn't much involved in the case except the question whether the sale made by the tutor, under the provisions of Act No. 77 of 1928, complied with the provisions of that act, for if it did, it strikes us that that ends the litigation.
[1, 2] Counsel for the plaintiffs has focused his argument on what he calls the bad faith of Mr. Gremillion who became the purchaser and owner of the property several months after the sale by the tutor to Alphe LeBlanc, stressing the point that Mr. Gremillion was attorney for the succession of Mrs. Cormier and also prepared and conducted the proceedings for the sale by the tutor. Gremillion freely admits that title was placed in LeBlanc's name for convenience only and that he was the real purchaser. Why it was handled in that manner does not appear in the records, but assuming that it was because of the connection of his law firm with the matter that he deemed it better not to appear as the purchaser in the sale by the tutor there was nothing wrong in what he did provided of course that all the legal formalities of Act No. 77 of 1928 were properly observed. We believe that they were and after considering all the facts and circumstances in the case we have concluded that the sale was about the best that could be expected for the minors at the time. Their counsel seems to criticize the charge that was made for the attorneys' fees for settling the succession of their mother which was part of the cash consideration for the sale of the property. What the exact amount of the attorneys' fees was does not appear as the costs of the succession were also involved, but we would judge that they amounted to anywhere from $250 to $300, which we cannot say was exorbitant considering the work that was involved.
Taking up the various grounds of attack leveled by the plaintiffs against the proceedings under which their interest in the property was sold by their tutor we find their complaints to be either that there were things done which were prohibited by the statute under which they were purported to be conducted, Act No. 77 of 1928, or that some of the requirements of the statute had not been complied with.
[3, 4] In the first place it is contended that, as minors, their interest in the property could not be sold at private sale to pay debts but there is no such restriction to be found in the statute. Next they urge that the property was not sold at private sale for the purpose of effecting a partition but for the purpose of paying debts. Again we find upon consulting the statute that there is no prohibition in any of its provisions against selling the property, no matter what the purpose, whenever it shall appear to the tutor of the minors that it is to their manifest advantage to sell it at private sale.
[5] It is also contended that the property was sold under the provisions of Act No. 149 of 1924, as amended by Act No. 77 of 1928 and as under the terms of these statutes only the minor's interest, or the entire property belonging to the minors, could be sold, consequently the sale of the entire property in which they had an interest could not be sold as was done by the tutor in this case. We do not think that such a limitation is contemplated by the language in either of these statutes. Such a construction would merely require the execution of two acts of sale where only one might serve the purpose. If, as is apparently conceded, the entire interest of the minors in the property could be sold at private sale on proper order or judgment of Court being obtained, what could prevent the tutor from selling his undivided interest at the same time? To say that he could not join in the same sale but would have to sell his interest by a separate deed would *Page 624 
appear to be forcing him to do something that would be futile and would only impose additional costs on the parties in interest.
[6-8] Plaintiffs next complain that there was no evidence adduced before the district judge to show that it was to their advantage and interest that the property be sold at private sale. In this connection we note that the statute requires that a petition setting forth the facts be presented to the district judge and if in his opinion they justify it, he shall issue a rule directed to the under-tutor ordering him to show cause why the prayer of the petition should not be granted. The statute then provides that "Upon trial of said rule, the Court shall hear such evidence as may be necessary to establish the advantage to the minor * * * of the private sale of the property." Section 2. (Italics ours.) The terms of the statute were literally complied with in this respect. A petition setting forth the facts fully why it was to the advantage of the minors that the property be sold at private sale for the offer he had received, was presented to the Court by their tutor. The district judge evidently was satisfied that the facts as stated justified an order for a rule on the under-tutor as he granted one. The under-tutor accepted service of the rule and filed an answer in which, for the reasons stated by him, he consented that the matter be submitted to the Court on the face of the papers. There was no one else to object so what further evidence was necessary? The statute requires the Court, on the trial of the rule, to hear such evidence as may be necessary, as we have observed, to establish the advantage to the minors of the sale, and if what he had before him was sufficient to satisfy the district judge on that point we can't see on what ground plaintiffs can, at this late date, be heard to complain on that score. On this same ground plaintiffs also complain that the district judge did not fix a minimum price to be accepted nor did he enter an order for the reinvestment of the proceeds of the sale for their benefit, as minors, all as is provided for in the statute. Their counsel can hardly be serious in these complaints as in the petition for the sale of the property the tutor alleged that despite his endeavors to sell the property, the offer he had was the only one that had been made. He set out what the offer was in detail and it was at the price of that offer, the only one he had been able to get, that the Court ordered the sale to be made. As for an order for investment of the proceeds of the sale for the benefit of the minors, there being no proceeds coming to them it stands to reason that no such order could be issued.
[9] The last and perhaps most serious ground on which the attack is made is that the property was worth far more than the alleged price for which it was sold. Whilst it is true that in August, 1926, plaintiffs' father bought the property at the price of $2500, on terms of cash and credit, it is also true that in November, 1929, with the same improvements on it, it was appraised in the inventory of their mother's estate at $1900. That, as is shown by the testimony, was the period of a countrywide depression in which values, generally speaking, were at the lowest ebb and real estate was hard to sell. It was only a short time after that the sale of the minors' interest at private sale was ordered by the Court, based on a price of $1900. It is a fact that Mr. Gremillion later sold it for $2500, part cash and part credit, and reserved the minerals, but that was seven years after he had bought it, during which time he paid the taxes regularly and spent a considerable amount of money erecting new improvements on it. There was testimony of certain witnesses concerning values of other properties in the same neighborhood on which, with all other considerations before him, the trial judge concluded that the price paid at the sale under order of Court in November, 1929, at least equalled the other prices at the time. We think that is correct and hold that there is no merit in this last ground of attack.
[10] Counsel for defendants cite authorities to the effect that in cases of sales of property made under an order or judgment of Court, the judgment, in so far as the purchaser is concerned, is conclusive unless there is shown to have been some imposition, fraud or mistake induced by the purchaser. The judicial proceedings on which such judgment is based may very well, and in some cases have, served as the basis of a plea of estoppel. In this connection we believe the following language of Justice Higgins in the case of Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633, 643, on rehearing, is pertinent: "While it is necessary that the rights of minors be protected in every way possible, it is likewise essential that titles to real estate should be stable and certain and, therefore, where the legal representatives of minors, *Page 625 
acting in their behalf, follow the requirements of the law in representing them to the best of their ability and understanding in a way that is considered most advantageous and beneficial to the minors' interest, the minors are thereby bound and are estopped to deny the judicial declarations of fact and representations made by their tutor in their behalf, when third persons have relied thereon and dealt with them in good faith and for a valuable consideration."
There was no plea of estoppel filed in this case, but we think that the language quoted supports the defenses such as they were made and also the judgment appealed from on the facts such as they were found to be.
In view of the conclusions reached it becomes unnecessary to consider the various pleas of prescription which were filed by the defendants.
Judgment affirmed.