68 So.2d 116 (1953)
LEVENSON
v.
CHANCELLOR et al.
No. 19981.
Court of Appeal of Louisiana, Orleans.
October 19, 1953.
Rehearing Denied November 30, 1953.
*117 Delvaille H. Theard, New Orleans, for plaintiff and appellant.
Legier, McEnerny & Waguespack, New Orleans, for Charles V. Rosato, Mrs. Rosalie Piazza, divorced wife of Robert P. Chancellor, Mrs. Pedra Rosato, divorced wife of Eugene O. Mead, and Mrs. Stephanie Rosato, wife of John O. Ciolino, defendants and appellees.
Dart, Guidry & Price, and Raymond Gauche, New Orleans, for Otto L. Latour, defendant and appellee.
Before JANVIER and McBRIDE, JJ., and MITHOFF, Judge Ad Hoc.
*118 MITHOFF, Judge Ad Hoc.
Plaintiff appealed from a judgment dismissing his demand for a declaratory judgment recognizing his title to certain property purchased by him to be good, valid and merchantable. The record reflects the following facts:
On October 5, 1936, by act before Robert E. O'Connor, Notary Public, the Phoenix Building & Loan Association sold to Pasquale Rosato, who had been married but once and then to Marie Montalbano, who was then living and residing with him, Lots 15 and 16, Square No. 424, Second District of the City of New Orleans, upon which was located a building bearing the Municipal No. 5655 Woodlawn Place.
On February 24, 1940, Marie Montalbano, the aforesaid wife of Pasquale Rosato, died intestate leaving her husband as the surviving spouse in community and three children and a grandchild as her sole and only heirs at law, namely: Mrs. Pedra Rosato, wife of Eugene O. Mead, Charles V. Rosato, Mrs. Stephanie Rosato, wife of John O. Ciolino, and Mrs. Rosalie Piazza, wife of Robert P. Chancellor (the last being the child of Mrs. Angelina Rosato, wife of Iquazio Piazza, a predeceased child of the decedent). Mrs. Rosato's succession was duly opened in the Civil District Court for the Parish of Orleans under docket No. 234-910, and by judgment dated May 8, 1940, the surviving husband was recognized and placed in possession of an undivided one-half of the aforementioned property and other assets, and the four heirs were each placed in possession of an undivided one-eighth, subject to the usufruct in favor of Pasquale Rosato.
On May 2, 1948, Pasquale Rosato died leaving a will, which made only one bequest and that to his daughter, Mrs. Pedra Rosato Mead, of one-half of his interest in the property designated as 117 S. Solomon Street as an extra portion. An inventory taken in the succession proceedings of Pasquale Rosato listed as assets the realty 5655 Woodlawn Place and Lot X of Square No. 784, First District, the improvements on which are designated by the No. 117 S. Solomon Street. In the petition for possession the following language was used:
"That by the terms of the last will and testament of the decedent, made in nuncupative form by public act and filed herein, the said testator had bequeathed to his daughter, Pedra Rosato-Mead, one (1/3) third of his property over and above her legitime as an extra portion;
"That the remainder of testator's estate, under the law, became inherited in equal portions by his children and a child of a pre-deceased daughter, towit:
"Child:Pedra Rosato-Mead, by will, one (1/3) third;
"Child:Pedra Rosato-Mead, as legitime, one (1/6) sixth;
"Child:Charles V. Rosato, as legitime, one (1/6) sixth;
"Child:Stephanie Rosato-Ciolino, as legitime, one (1/6) sixth;
"Grand Child:Rosalie Piazza-Chancellor, as only child of a pre-deceased daughter, Angelina Rosato, wife of Iquazio Piazza, who died in year 1909, as legitime; one (1/6) sixth;"
Proper proof having been adduced by means of the usual affidavit of heirship, the four heirs mentioned in the petition were placed in possession in the proportions above set forth as appears from the judgment dated June 14, 1948.
In the proceedings bearing No. 263-968 of the docket of the Civil District Court for the Parish of Orleans, Mrs. Rosalie Piazza, who was alleged to be the divorced wife of Robert P. Chancellor, was interdicted, and her uncle, Charles V. Rosato, was appointed and qualified as her curator.
On July 1, 1948 a petition for a partition was filed under docket No. 284-080 of the Civil District Court for the Parish of Orleans by Mrs. Pedra Rosato-Mead as plaintiff. She alleged that the property No. 5655 Woodlawn Place was owned in indivision in the following proportions:

*119 "Mrs. Pedra Rosato-Mead9/24ths
Mrs. Rosalie Piazza-Chancellor 5/24ths
Charles V. Rosato5/24ths
Stephanie Rosato-Ciolino5/24ths;"
Mrs. Mead alleged that she was unwilling to remain any longer as co-owner in indivision and desired a partition; that the property was not divisible in kind and should be sold to effect a partition. She prayed for an inventory, the appointment of experts and appraisers, and for citation upon Mrs. Rosalie Piazza Chancellor, interdict, through her curator, Charles V. Rosato; that petitioner and her three coowner defendants be recognized as owners in indivision of the property in the proportions above set forth, repeating the names of the co-owners and the proportionate share of each; that a judgment decreeing a partition by licitation be rendered, the sale to be made by an auctioneer to the highest bidder for cash, and that the parties be referred to a designated notary for the purpose of completing the partition. The interdict was served with citation on July 1, 1948, through her curator, Charles V. Rosato.
The only real property described in the inventory in the partition proceedings was the two lots upon which the building bearing 5655 Woodlawn Place was located. The inventory was approved and homologated; the experts reported that the property could not be divided in kind and that a sale was necessary in order to effect a partition.
On July 8, 1948, Mrs. Pedra Rosato Mead, plaintiff in the partition proceedings, filed a rule against the interdict to show cause why the partition by licitation should not be made by public sale for cash as prayed for in the petition. The court on July 8, 1948, ordered the curator for the interdict to show cause on July 14, 1948, why a partition by licitation should not be effected. This rule was served on the curator for the interdict on July 10, 1948. The record shows that at the trial of the rule there were present:
"George Sladovich, Jr., Attorney for Mrs. Pedra Rosato-Mead, and Mrs. Stephanie Rosato-Ciolino.
"Charles V. Rosato, on behalf of himself and as curator of Mrs. Rosalie Piazza-Chancellor."
After hearing the evidence, the judge proceeded to render judgment in favor of the plaintiff and against the defendants recognizing them to be the owners in indivision of the property sought to be partitioned, described in the petition and also in the inventory, in the following proportions, towit:
"Mrs. Pedra Rosato Mead
 Nine Twenty-fourths (9/24ths)
Stephanie Rosato-Ciolino
 Five Twenty-fourths (5/24ths)
Charles V. Rosato
 Five Twenty-fourths (5/24ths)
Rosalie Piazza-Chancellor
 Five Twenty-fourths (5/24ths)"
The judgment ordered the property sold at public auction by a named auctioneer, and all parties to the adjudication were referred to George Sladovich, Jr., Notary Public; the sale to be made for cash and the parties to the suit be referred to the same notary for the purpose of completing the partition, all costs to be borne by the mass. This judgment was read, rendered and signed July 14, 1948, by the judge of division "B".
The stenographic notes made at the trial of the rule show that Charles V. Rosato was sworn as a witness and testified that he was the co-owner of five twenty-fourths of the property; that Mrs. Stephanie Rosato Ciolino and Mrs. Rosalie Piazza Chancellor, the interdict, were each co-owners of five twenty-fourths of the property, and that the plaintiff, Mrs. Pedra Rosato Mead was the owner of a nine twenty-fourths interest. Rosato further stated that he was the curator of the interdict, and when asked if he knew of any reason why the partition should not take place to effect a division of interests of the various co-owners, he replied that he knew of none. The attorney *120 for the plaintiff in the partition proceedings offered in evidence "the motion of concurrence of the under-curatrix with respect to the interdict's interest in these proceedings," which document was filed two days later.
As evidenced by the act of sale before Walter G. Wedig, Notary Public, on October 8, 1948, the auctioneer, by virtue of the authority vested in him by the court, and in confirmation of a public adjudication, sold and transferred the property to the Oak Homestead Association for $13,250.00 cash. Norman Levenson, who was the adjudicatee at the public sale, intervened in the act and confirmed the sale to the homestead association. The co-owners, including the interdict, through her curator, also intervened in the act and transferred the property and confirmed the sale. On the same day the Oak Homestead Association transferred the property to Norman Levenson, by act before the same notary. Then, the notary public named in the judgment to whom the parties had been referred for the purpose of completing the partition, after deducting a proportionate portion of the expenses from the share of each coowner, distributed the remainder of the avails of the sale amongst the parties, and they, including the curator for the interdict, acknowledged payment thereof and receipted for the proportion due him or her as provided in the judgment.
The whole property, including the full interest of each co-owner, had been transferred by the sale to the purchaser. If the fractional interest of the interdict was erroneously shown to be one twenty-fourth less than her actual share, then in the settlement Mrs. Mead took the money representing this one twenty-fourth interest and became indebted to the interdict for such amount. The raison d'etre of the situation is that the one twenty-fourth interest which was due the interdict did not follow the property, but was converted into the price paid. Therefore, the interdict's right would not be in an action to claim a one twentyfourth interest in the property, but would be against Mrs. Mead for restitution.
The record further reveals that Norman Levenson, by an agreement in writing, contracted to sell the property to Otto L. Latour, who applied to a building and loan association for a loan to finance the transaction. The building and loan association referred the matter to its attorney for title examination, but the attorney was not satisfied with the merchantability of the title, the gravamen of his position being that in his opinion the interdict was not properly protected in the succession proceedings of her grandfather nor in the partition proceedings, by reason of the fact that an error had been committed which deprived her of a one twenty-fourth interest in the property.
Some negotiations were carried on between the attorney for Levenson and the attorney for the homestead to whom Levenson's purchaser had applied for a loan, and in order to comply with the latter's requirements a supplemental petition was prepared on behalf of Norman Levenson and Charles V. Rosato, in his capacity as curator of the interdict, for the purpose of equalizing the shares of the four heirs in the Succession of Pasquale Rosato, No. 282-975, whereby each would receive an undivided onefourth of one-half or one-eighth of the property. Levenson prayed to be recognized the owner of the full interest of each of the major heirs as purchaser at the partition sale, and placed in possession of the undivided one-eighth interest of each major heir; and it was further prayed that the interdict be placed in possession of an undivided one-eighth interest. A judgment was presented to the judge for his signature, but instead of signing the judgment, the judge inscribed thereon the word "denied." A judgment dated February 19, 1953, stating that the petition had not been joined in by all necessary parties to a proceeding to amend the former judgment; that the judgment of June 14, 1948, was improvidently rendered, since it did not conform to the provisions of the will of the deceased. The petition for the amendment was accordingly denied, and it was further decreed that the erroneous judgment be recalled, set aside and annulled.
*121 We take it that it was the intention of the judge to limit the annulment to the property 5655 Woodlawn Place. The possession on the other property was correct and in accordance with the bequest in the will.
The effort to reach an agreement having failed, Levenson filed this present suit under the provisions of LSA-R.S. 13:4231 et seq. against the four heirs of Pasquale Rosato and his wife, in order to have a declaratory judgment recognizing the validity of his title to the two lots acquired by him at the partition sale. The allegations of Levenson's petition more or less followed the facts heretofore recited.
The defendants filed exceptions of no cause of action and non-joinder. The exceptions of no cause of action were dismissed, but the one of non-joinder was maintained. In compliance with the ruling that Otto L. Latour, the purchaser under the contract of April 20, 1951, to buy the property from Levenson, was a necessary party, a supplemental petition brought him into the litigation. His exception of no cause of action was overruled. The transcript shows that the case had been allotted to Division "C" and upon motion concurred in by the judge of Division "B", matters were transferred to his division, all in accordance with Sec. 9 of Rule 8 of the Civil District Court for the Parish of Orleans.
A joint answer was filed by Charles V. Rosato, Mrs. Stephanie Rosato, wife of John O. Ciolino, and the interdict, through her curator. The important averments thereof disclose that Pasquale Rosato bequeathed to his daughter, Mrs. Pedra Rosato, divorced wife of Eugene O. Mead, a one-half interest in the property 117 S. Solomon Street as an extra portion, and made no other bequest in her favor; that in the succession proceedings she asserted that the will gave her one-third of her father's entire estate, including the property under consideration, and that she was further entitled to share equally in the remaining two-thirds of the estate; that no issue was raised for decision by the court in behalf of the interdict, and Mrs. Mead was adjudged the legatee of one-third of her father's share in 5655 Woodlawn Place, and the interdict received a one-sixth share, when as fixed by law it should have been one-fourth. It was further averred that in the partition suit No. 284-080 no answer was filed on behalf of the interdict.
Subsequent to the overruling of the Latour exception of no cause of action, he filed an answer in which he denied that the title to the property he agreed to purchase was good and merchantable, and that Levenson had no contract which could be enforced against him. He further made similar averments, as were contained in the answer of the Rosato heirs, in respect to the erroneous proportion the interdict received in the succession of her grandfather; that the curator was without authority to agree to the construction or interpretation sought to be put on the will by Mrs. Mead, which interpretation was prejudicial to the interest of the interdict, and that the judgment of June 14, 1948, was therefore null and void in adjudging Mrs. Mead to be entitled to a one-third extra portion in the entire succession of her father. Latour further averred that no issue was raised in said succession in respect to the claim of Mrs. Mead, and that the curator was without authority to consent to the judgment rendered in the matter; that in the partition suit, notwithstanding no answer or other pleading had been filed by the curator, and no preliminary default had been entered, a rule was filed to show cause on July 14, 1948, why a judgment should not be rendered ordering a partition of the property by licitation at public sale; that notwithstanding these irregularities a judgment was rendered against the interdict and other defendants ordering the partition requested in Mrs. Mead's petition, which judgment was null and void without issue having been joined by the plaintiff and the interdict. Further, that the purported motion filed by the under-curatrix on July 16, 1948, was null and void insofar as it attempted to validate the judgment, for the reason that the under-curatrix had no authority to consent to the rendition of said judgment or to validate it subsequent *122 to its rendition. The judge rendered judgment on April 25, 1952, confirming the preliminary default entered against Mrs. Mead, and further decreed that the title to the property was suggestive of litigation for the reason that the interdict was not properly represented in that no preliminary default had been taken, and the concurrence of the under-curatrix was not filed until two days after rendition of the judgment, Code of Practice, arts. 615, 606(4), and further that the reformation of the act of partition in the proceedings entitled: Pedra Rosato Mead v. Succession of Pasquale Rosato, No. 284-080, should have been taken in said partition proceedings.
The plaintiff was granted a suspensive appeal from this judgment, which is now before us for hearing.
No question has been raised in respect to the jurisdiction of the court, and none appears to have been set forth relative to the mode of proceeding for the relief sought through a declaratory judgment. We find no reason to transcend the selection by the plaintiff to accordingly prosecute his cause.
If the interdict was not properly defendant in the action for the partition, the proceedings against her would be null and void, and no other reason would be necessary to declare the title to the property to be suggestive of serious litigation.
By the provisions of LSA-C.C. art. 415 a person interdicted is, in every respect, like a minor who is under a tutor, and the rules respecting the tutorship of a minor apply with equal force to the curatorship of the person interdicted.
We find the law to be that in the absence of fraud, the minor brought into court through his tutor is fully bound as if he had been a major and personally cited. "All objections as to citations are shut off by the appearance and answer of all the defendants through attorneys * * *." Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805; citing Shaffer v. Scuddy, 14 La.Ann. 575; Johnson v. Weld, 8 La.Ann. 126; Louisiana State Bank v. Orleans Nav. Co., 3 La.Ann. 294.
Minors represented by their tutors in proceedings are concluded by a decree therein rendered by a competent court. Krone v. Krone, 138 La. 666, 70 So. 605; Succession of Begue, 112 La. 1046, 36 So. 849; Crawford v. Binion, 46 La.Ann. 1261, 15 So. 693; Martel v. Richard, 15 La.Ann. 598.
It has been frequently held that although a tutor or a curator may not confess judgment in an action brought against his ward, he may accept service of process and waive citation. Childs v. Pruitt, 196 La. 866, 200 So. 282; Boudreaux v. Lower Terrebonne Refining & Mfg. Co., 127 La. 98, 53 So. 456; see, also, McCrady v. Sebastian, 150 La. 459, 90 So. 760, 762. In the latter case the Supreme Court said: "* * * there is no provision of law which by reasonable implication denies to the tutor or curator the right to waive service and citation asis accorded to litigants generally by article 177 of the Code of Practice * * *."
The filing of an answer or entry of default before rendition of a judgment is waived where a litigant appears and participates in the trial. Ducote v. Ducote, 183 La. 886, 165 So. 133; McLellan v. Rosser, 116 La. 801, 802, 41 So. 97; Battaile v. O'Neil, 3 La.Ann. 229; Northwestern Bottle Co. v. Rosen, 8 La.App. 284 (writsrefused).
The important issue in this case gravitates to the reputed lack of proper protection of the interdict's interest in the matter of the succession of her grandfather and in the partition proceedings. Defendantsplace much credence in the force and effect of Art. 615 of the Code of Practice, which provides:
"A judgment rendered against a minor may be rescinded if such minor show either that his cause has not been well defended, or that he has been aggrieved by such judgment.
"But that action shall be prescribed if four years have elapsed after the minor *123 has arrived at the age of majority; nor can it be brought by the curator or the tutor during the minority of their ward; provided, that this article shall not be taken or construed to imply the nullity of a judgment where a minor has been regularly represented in a suit according to law."
It is to be noted that the rescission of the judgment cannot be invoked when the minor (interdict) has been regularly represented in a suit according to law. But the contrary is urged by the defendants who claim that the interdict was not properly represented in the partition suit in that no answer had been filed by her curator; that no default had been entered; that the case was tried on a day fixed by the court on a rule taken against the interdict and within the time allowed to file an answer, and that the motion by the under-curatrix concurring in the proceedings was filed two days after the judgment was rendered.
From the statement of the facts, supra, it is shown that the curator was present at the trial; that he testified that he was the owner of a five twenty-fourths of the property; that his sister, Mrs. Mead, the plaintiff, was the owner of a nine twentyfourths interest; that his sister, Mrs. Ciolino, owned five twenty-fourths, and that his ward, Mrs. Chancellor, also owned a five twenty-fourths interest, and that there existed no reason why the property should not be sold to effect a partition.
It must be remembered that the experts reported that the property was indivisible in kind. On the demand of a coowner a partition cannot be avoided. The curator was aware of this fact as shown by his testimony. The interests of all parties became common and parallel, and the only way to partition the property was to cause it to be sold and the net proceeds thereof properly distributed among the coowners. The shares of Mrs. Ciolino, Charles Rosato, and the interdict were represented to be in the same proportion, and the defendants never made any opposition to the proceedings because on the face of the partition record they had none. The judgment of partition had two effects or phases: The first was the sale, and the second, the division of the proceeds. Ordinarily it may be assumed that holding property in indivision with an interdict is not a desirable arrangement. The owners sui juris must abide the rights of the incompetent in strict accounting and to await the obtaining of proper orders of court when necessary. This in itself would be a personal motive for a division.
Why Mrs. Mead claimed the disposable portion of the property 5655 Woodlawn Place in the succession of her father under a will which gave her a half interest as an extra portion in property 117 S. Solomon Street, and why the other co-owners permitted her to claim such share is not disclosed by the record in the Succession of Pasquale Rosato. It could hardly be implied that the reason was not moral, but the method could not be said to be regular and in accordance with the requirements of law. It is suggested that no fraud was committed and that the interpretation of the will by the parties was in error. We will let it stand at this conclusion.
However, this erroneous allocation of shares in the succession proceedings has nothing to do with the results in the partition proceedings. As shown before, there was a judgment pronounced by the court ordering a partition by licitation after hearing where all parties were present, which became final and conclusive on all litigants to the proceeding. No appeal had been taken and no opposition had been invoked against the distribution of the proceeds. On the contrary, all parties receipted for their individual shares. When the property was sold to Norman Levenson, plaintiff in this present suit, all he had to do to protect himself was to see that the court had jurisdiction and that all coowners of the property were properly before the court and the interdict properly defended. This was evidently done by the attorney for the Oak Homestead Association, who examined the title to the property offered as security for a loan as required *124 by the Building and Loan Statute. It certainly was his opinion that all parties to the partition proceeding were precluded by a judgment of court, which on its face was binding and final on all the co-owners. It ought not to be assumed that a purchaser who pays his hard-sought money for property ordered to be sold under a final judgment of court, upon which the general public respects and relies, should be charged with the duty of being the arbiter of the personal affairs among the party litigants. A conclusion to the contrary would constitute bad psychology and bad economics.
Sales of property belonging to successions or minors, directed or authorized by courts, are judicial sales. LSAC.C. art. 1869.
A purchaser at a judicial sale is bound to inquire into the jurisdiction of the court granting the order of sale, but the truth of the record concerning matters within its jurisdiction cannot be disputed and the purchaser is protected by the order of sale. Key v. Salley, 218 La. 922, 51 So. 2d 390; Lindsey v. Mixons' Heirs, 161 La. 31, 108 So. 114; Krone v. Krone, supra; Thibodaux v. Barrow, 129 La. 395, 56 So. 339; Succession of Thomas, 114 La. 693, 694, 38 So. 519; Weil v. Schwartz, 51 La. Ann. 1547, 26 So. 475; Crawford v. Binion, supra; Succession of Theze, 44 La.Ann. 46, 10 So. 412; Grevemberg v. Bradford, 44 La.Ann. 400, 10 So. 786; Webb v. Keller, 39 La.Ann. 55, 1 So. 423; Cormier v. Thibodeaux, La.App., 20 So.2d 621.
Minors who receive the benefit of a sale of land consummated by their duly authorized legal representatives, acting in good faith, are estopped to deny the verity of the transaction. Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633; Heirs of Barrow v. Barrow, 38 La.Ann. 645; Cormier v. Thibodeaux, supra.
A judgment ordering a sale to effect a partition becomes executory ten days after the partition is signed, and after the expiration of the delay for a suspensive appeal all power to prevent the execution of the judgment is lost. Pettingill v. Hills, 199 La. 557, 6 So.2d 660; Hollingsworth v. Caldwell, 195 La. 30, 196 So. 10; Wells v. Files, 136 La. 125, 66 So. 749; Heroman v. Louisiana Institute of Deaf and Dumb, supra.
In Barbarich v. Meyer, 154 La. 325, 97 So. 459, 460, which was a partition suit, all parties were before the court, including an interdict. The interdict was a usufructuary of part of the property, and the district judge in rendering judgment undertook to commute this usufruct into a lumpsum to be taken out in cash from the share of the naked owner. The judgment became final as no appeal had been taken therefrom, and the property was ultimately sold at public sale. The adjudicatee, contending that the judgment was irregular and null, refused to accept title to the property and was sued for specific performance. The Supreme Court commented:
"He complains, also, that the property was sold free of a usufruct in favor of the interdict upon the share of plaintiff, which usufruct was unlawfully commuted by the judgment for a cash sum to be taken from the share of the plaintiff. The judgment was erroneous, and if appealed from would have been reversed. Smith v. Nelson, 121 La. 170, 46 So. 200.
"But the fact is that the judgment was so rendered, and has not been appealed from; and it is now res judicata between all parties, including the interdict, who was properly represented under the provisions of Act 219 of 1918.
"`A final decree of a competent court in a partition suit concludes all parties on all questions of title raised or that might have been raised in the partition proceedings.' Metropolitan Bank v. Times-Democrat Publishing Co., 121 La. 547, 46 So. 622.
"In the case last named, the decree of partition was attacked on the ground that it fixed erroneously the interests *125 of some of the parties. But the court said:
"`The decree fixed the respective interests of the parties in the property to be partitioned, and, if it was erroneous in any respect, the remedy was by appeal' citing Bayhi v. Bayhi, 35 La. Ann. 527."
A partition sale in pursuance of a mandate of court transfers the property as completely as if the owner had sold it himself. Hollingsworth v. Caldwell, supra.
Refusal to take title must be based on a showing of reasonable grounds of attack. In this case the curator performed reasonable diligence to protect his ward, and if perfunctory proceedings were not followed, he had the right without prejudicing his ward to waive them. His action in the premises bound the interdict just as much as if she were a competent person and conducted her own defense. Those things he waived were not prejudicial to the interest of the interdict and she lost nothing thereby, insofar as the actual sale of the property was concerned.
In the case of Boudreaux v. Lower Terrebonne Refining & Mfg. Co., supra, a judgment had been rendered against a widow, her major children, and her minors, represented by her as tutrix, in favor of longstanding creditors. Her husband had died leaving a plantation encumbered with mortgage debts accumulated and loans made. It was in order to straighten out the entanglement that caused the creditors to file suits to adjust their claims. When some of the heirs became of age, they, with other heirs still minors, filed suits to nullify the judgment based on grounds of lack of proper defense, fraud, failure by the tutrix to file proper pleadings, etc. The Court said [127 La. 98, 53 So. 460]:
"The present suit being an action in nullity of judgment, plaintiffs cannot be allowed to rely upon matters which would only go to show that the judgment is erroneousnot that it is null. Matters that could have been set up as a defense to the merits of a suit cannot be set up as grounds for annulling the judgment rendered in such suit. The reason is that the judgment conclusively negatives all such matters. It is res judicata of them all. After a judgment has been rendered, inquiry into the law and facts involved in the merits of the case is no longer possible, except by appeal. Taliaferro v. Steele, 14 La.Ann. 656; Landry v. Bertrand, 48 La.Ann. 48, 19 So. 126; Calhoun v. Mechanics' & Traders' Bank, 30 La. Ann. [772], 793. * * *"
The annulment of the judgment by the judge of Division "D", dated June 14, 1948, rendered and signed in the matter of the Succession of Pasquale Rosato, could in no way affect the title vested in the present owner, for the reason that his title emanates from the partition proceedings which took place a long time prior to the annulment, and that judgment was ex parte placing heirs in possession, and does not provide a sufficient reason to declare the title subject to serious litigation. The only purpose of applying for the amendment was to carry out the request of the purchaser, Latour, not acquiesced in by Levenson, except for the purpose of trying to please the requirements of the title examiner. All negotiations failed and thereafter Levenson resorted to the present suit.
Cases involving making good title to real property based on prescription are similar to declaratory suits such as the one involved in the present cause. There was no contractual matter submitted for interpretation and the defendants were brought into court to vindicate a title in the plaintiff which had been rejected on the ground that it was subject to serious litigation. In suits for specific performance wherein the plaintiff establishes a good title in himself after disclosing proper possession, the Supreme Court has required him to pay costs. The present case is analogous to the prescriptive case in that plaintiff thought it necessary to have the court declare his title good and merchantable for his own benefit and not because the defendants *126 caused him any disturbance. Under such circumstances he should pay the costs.
Another point was the one which stated that the concurrence of the undertutor was not filed until two days after the trial. But as shown in the statement of facts, it had been offered in evidence at the trial. Notwithstanding this objection no law required the deliberation of a family meeting where property was to be sold for cash to effect a partition. The concurrence of an under-tutor takes the place of a family meeting under the present law. See Denena v. Gemelli, 140 La. 893, 74 So. 186, and cases cited therein.
Attention is directed to Art. 977 of the LSA-C.C. relative to acceptance, the second paragraph of which reads:
"It shall not be necessary for minor heirs to make any formal acceptance of a succession that may fall to them, but such acceptance shall be considered as made for them with benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance."
This law, together with that which makes the minor a ward of the court may properly be classed within the police power vested in the court to protect the rights of persons whom the law designated as incompetent to administer their own affairs. When Pasquale Rosato died, the interest of the interdict was immediately accepted for her by operation of the aforesaid article of the Civil Code, and her share in the Woodlawn Place property was thereby fixed as an undivided six twenty-fourths of the whole. All subsequent proceedings which were conducted in her behalf could not change her ownership. As before mentioned, the sale at the partition proceedings vested the purchaser with title to her full ownership, although there was error in fixing her pro rata in the pleadings and in the judgment. The partition proceedings could not have been opposed. The fractional interests were binding on the major co-owners, but not on the minors, whose pro rata was protected by law, so that the time she was discriminated against was when the proceeds of the sale were partitioned by act before the notary whom the court appointed to settle with all parties concerned. It is our belief that if the court had been properly advised it could have invoked its power to protect the interdict, its ward, and have ordered all parties to appear to discuss the refusal of the curator to agree to the partition. This brings up the question of whether the interdict could seek relief by claiming the proceeds of the one twentyfourth share collected by Mrs. Mead, which we are not called upon to decide. However, in passing, we might direct attention to the case of Childs v. Pruitt, supra.
Our opinion is that the costs of these proceedings should be paid by plaintiff, as it seems that the objections to his title were reasonable, and it was necessary for plaintiff to resort to judicial proceedings to set at rest questions concerning his title. See Zahn v. Arensberg, 154 La. 70, 97 So. 301.
It is ordered, adjudged and decreed that the judgment of the lower court is annulled, avoided and reversed. It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Norman Levenson, and against the defendants, Mrs. Pedra Rosato, divorced wife of Eugene O. Mead, Charles V. Rosato, Mrs. Stephanie Rosato, wife of John O. Ciolino, and the interdict, Mrs. Rosalie Piazza, divorced wife of Robert P. Chancellor, and also against Otto L. Latour, declaring that he is the sole and only owner of the property:
"Two Certain Lots of Ground, situated in the Second District of this city in the Homedale Subdivision of Lakeview of the New Orleans Land Company's property, designated as Lots Nos. 15 and 16 of Square No. 424, bounded by Woodlawn, Taylor Avenue, Homedale and Hawthorne Sts., on a plan of J. F. Coleman, Engineer, dated March 1912, which said lot measures each, twenty-five feet front on Woodlawn Place, by a depth of one hundred twenty feet, between equal and parallel lines, Lot No. 15 commencing at a *127 distance of One Hundred feet from a common alley fifteen feet wide and which alley is at a distance of One hundred and twenty-three feet from Taylor Avenue and which said lots have the use of a common alley fifteen feet wide in the rear, thereof, running through the center of said square.
"The improvements thereon bear Municipal Nos. 5655 WoodlawnPlace."
The plaintiff is to pay the costs of both courts.
Reversed.
REGAN, J., takes no part.